# EXHIBIT E - RECORDS OF PAYMENTS TO SUPPLIERS

| 采购单号 | 入库日期 | 供应商代码 | 采购日期 | 采购时间(UTC-6) | 结算日期 | SKU | 入库数量 | 单价 | 财务付款金额 |
|---|---|---|---|---|---|---|---|---|---|
| 97955 | 2011/6/18 | FAX-LS-TH | 2011/6/15 | 6/15/2011 19:14 | 6/27/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 98368 | 2011/6/18 | FAX-LS-TH | 2011/6/16 | 6/16/2011 19:30 | 6/27/2011 | 71512 | 2 | ¥ 170.00 | ¥ 340.00 |
| 98594 | 2011/6/20 | FAX-LS-TH | 2011/6/17 | 6/17/2011 19:26 | 6/28/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 99276 | 2011/6/23 | FAX-LS-TH | 2011/6/21 | 6/21/2011 19:26 | 7/4/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 99674 | 2011/6/25 | FAX-LS-TH | 2011/6/23 | 6/23/2011 19:30 | 7/4/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 100132 | 2011/6/28 | FAX-LS-TH | 2011/6/26 | 6/26/2011 19:32 | 7/6/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 103774 | 2011/7/16 | FAX-LS-TH | 2011/7/14 | 7/14/2011 19:38 | 7/22/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 104065 | 2011/7/18 | FAX-LS-TH | 2011/7/15 | 7/15/2011 20:27 | 7/25/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 104788 | 2011/7/21 | FAX-LS-TH | 2011/7/19 | 7/19/2011 19:29 | 7/28/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 105844 | 2011/7/27 | FAX-LS-TH | 2011/7/25 | 7/25/2011 19:23 | 8/2/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 106899 | 2011/7/31 | FAX-LS-TH | 2011/7/28 | 7/28/2011 19:23 | 8/8/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 109117 | 2011/8/18 | FAX-TX-KM | 2011/8/8 | 8/8/2011 19:27 | 9/1/2011 | 73113 | 10 | ¥ 160.00 | ¥ 1,600.00 |
| 110064 | 2011/8/16 | FAX-LS-TH | 2011/8/14 | 8/14/2011 19:22 | 8/25/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 113170 | 2011/8/31 | FAX-LS-TH | 2011/8/29 | 8/29/2011 19:25 | 9/7/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 114292 | 2011/9/5 | FAX-LS-TH | 2011/9/2 | 9/2/2011 19:28 | 9/13/2011 | 71512 | 1 | ¥ 170.00 | ¥ 170.00 |
| 116385 | 2011/9/19 | FAX-LS-TH | 2011/9/14 | 9/14/2011 19:20 | 2011-9--26 | 71512 | 3 | ¥ 150.00 | ¥ 450.00 |
| 117047 | 2011/9/19 | FAX-LS-TH | 2011/9/16 | 9/16/2011 19:21 | 2011-9--26 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 117250 | 2011/9/22 | FAX-LS-TH | 2011/9/18 | 9/18/2011 19:26 | 2011-9--28 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 118220 | 2011/9/22 | FAX-TX-KM | 2011/9/20 | 9/20/2011 19:21 | 2011-9--28 | 73113 | 1 | ¥ 160.00 | ¥ 160.00 |
| 119518 | 2011/9/29 | FAX-LS-TH | 2011/9/25 | 9/25/2011 19:19 | 10/8/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 120493 | 2011/9/30 | FAX-TX-KM | 2011/9/27 | 9/27/2011 19:21 | 10/10/2011 | 73113 | 1 | ¥ 155.00 | ¥ 155.00 |
| 121414 | 2011/10/6 | FAX-LS-TH | 2011/9/29 | 9/29/2011 19:22 | 10/13/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 121822 | 2011/10/10 | FAX-TX-KM | 2011/10/5 | 10/5/2011 19:26 | 10/17/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 122223 | 2011/10/11 | FAX-LS-TH | 2011/10/6 | 10/6/2011 19:23 | 10/18/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 122637 | 2011/10/12 | FAX-TX-KM | 2011/10/9 | 10/9/2011 19:22 | 10/19/2011 | 73113 | 1 | ¥ 155.00 | ¥ 155.00 |
| 123708 | 2011/10/17 | FAX-TX-KM | 2011/10/12 | 10/12/2011 19:24 | 10/25/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 124146 | 2011/10/17 | FAX-LS-TH | 2011/10/13 | 10/13/2011 19:28 | 10/25/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 124903 | 2011/10/20 | FAX-LS-TH | 2011/10/16 | 10/16/2011 19:18 | 10/27/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 125928 | 2011/10/24 | FAX-TX-KM | 2011/10/19 | 10/19/2011 19:20 | 10/31/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 126502 | 2011/10/24 | FAX-LS-TH | 2011/10/20 | 10/20/2011 19:30 | 10/31/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 127490 | 2011/10/28 | FAX-LS-TH | 2011/10/24 | 10/24/2011 19:31 | 11/3/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |

| 127743 | 2011/10/28 | FAX-TX-KM | 2011/10/25 | 10/25/2011 19:24 | 11/3/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
|---|---|---|---|---|---|---|---|---|---|
| 128507 | 2011/10/29 | FAX-TX-KM | 2011/10/27 | 10/27/2011 19:29 | 11/4/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 129189 | 2011/11/1 | FAX-LS-TH | 2011/10/30 | 10/30/2011 19:22 | 11/9/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 129875 | 2011/11/4 | FAX-LS-TH | 2011/11/1 | 11/1/2011 19:26 | 11/11/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 130494 | 2011/11/4 | FAX-LS-TH | 2011/11/2 | 11/2/2011 19:33 | 11/11/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 132908 | 2011/11/15 | FAX-TX-KM | 2011/11/10 | 11/10/2011 19:25 | 11/22/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 133913 | 2011/11/17 | FAX-TX-KM | 2011/11/14 | 11/14/2011 19:22 | 11/23/2011 | 73113 | 1 | ¥ 155.00 | ¥ 155.00 |
| 134835 | 2011/11/21 | FAX-LS-TH | 2011/11/16 | 11/16/2011 19:27 | 11/28/2011 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 138532 | 2011/12/1 | FAX-TX-KM | 2011/11/28 | 11/28/2011 1:03 | 12/6/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 139678 | 2011/12/2 | FAX-TX-KM | 2011/11/30 | 11/30/2011 19:39 | 12/7/2011 | 73113 | 3 | ¥ 155.00 | ¥ 465.00 |
| 140619 | 2011/12/6 | FAX-TX-KM | 2011/12/4 | 12/4/2011 19:43 | 12/12/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 141583 | 2011/12/9 | FAX-TX-KM | 2011/12/7 | 12/7/2011 19:32 | 12/15/2011 | 73113 | 2 | ¥ 155.00 | ¥ 310.00 |
| 143067 | 2011/12/15 | FAX-LS-TH | 2011/12/12 | 12/12/2011 19:37 | 12/20/2011 | 71512 | 4 | ¥ 150.00 | ¥ 600.00 |
| 144487 | 2011/12/18 | FAX-TX-KM | 2011/12/16 | 12/16/2011 19:42 | 12/26/2011 | 73113 | 1 | ¥ 155.00 | ¥ 155.00 |
| 148213 | 2011/12/31 | FAX-LS-TH | 2011/12/28 | 12/28/2011 19:41 | 1/6/2012 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 148731 | 12/21/2011 | FAX-LS-TH | 12/19/2011 | 12/19/2011 20:17 | 1/9/2012 | 71512 | 4 | ¥ 150.00 | ¥ 600.00 |
| 150166 | 2012/1/9 | FAX-LS-TH | 2012/1/4 | 1/4/2012 19:33 | 1/16/2012 | 71512 | 2 | ¥ 150.00 | ¥ 300.00 |
| 150831 | 2012/1/12 | FAX-LS-TH | 2012/1/6 | 1/6/2012 19:25 | 1/19/2012 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 152057 | 2012/1/16 | FAX-LS-TH | 2012/1/11 | 1/11/2012 19:35 | 1/20/2012 | 71512 | 3 | ¥ 150.00 | ¥ 450.00 |
| 152532 | 2012/1/17 | FAX-LS-TH | 2012/1/13 | 1/13/2012 19:29 | 1/20/2012 | 71512 | 1 | ¥ 150.00 | ¥ 150.00 |
| 153155 | 2012/2/12 | FAX-TX-KM | 2012/2/5 | 2/5/2012 19:24 | 2/20/2012 | 73113 | 8 | ¥ 155.00 | ¥ 1,240.00 |
| 155106 | 2012/2/14 | FAX-TX-KM | 2012/2/10 | 2/10/2012 21:23 | 2/21/2012 | 73113 | 1 | ¥ 155.00 | ¥ 155.00 |
| 157507 | 2012/2/20 | FAX-LS-TH | 2012/2/17 | 2/17/2012 20:40 | 2/27/2012 | 71512 | 19 | ¥ 150.00 | ¥ 2,850.00 |
| 158770 | 2012/2/25 | FAX-TX-KM | 2012/2/22 | 2/22/2012 19:27 | 3/2/2012 | 73113 | 1 | ¥ 155.00 | ¥ 155.00 |
| 162019 | 2012/3/6 | FAX-LS-TH | 2012/3/3 | 3/3/2012 2:42 | 3/20/2012 | 71512 | 5 | ¥ 150.00 | ¥ 750.00 |
| 163567 | 2012/3/14 | FAX-LS-TH | 2012/3/12 | 3/12/2012 2:16 | 3/21/2012 | 71512 | 9 | ¥ 150.00 | ¥ 1,350.00 |
| 166115 | 2012/3/27 | FAX-TX-KM | 2012/3/24 | 3/24/2012 3:20 | 4/5/2012 | 73113 | 1 | ¥ 155.00 | ¥ 155.00 |
| 汇总 | | | | | | | 127 | | ¥ 19,640.00 |

| 结算单状态 | 结算单条码 | 结算日期 | SKU | PaiedQty | Price | Payment amout | 供应商 |
|---|---|---|---|---|---|---|---|
| 已结算 | PS201112020106 | 12/13/2011 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201112060092 | 12/19/2011 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201112080064 | 12/19/2011 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201112180045 | 12/27/2011 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201112190073 | 12/27/2011 | 73113 | 2 | ￥ 155.00 | ￥ 310.00 | FAX-TX-KM |
| 已结算 | PS201201020159 | 1/10/2012 | 73113 | 2 | ￥ 155.00 | ￥ 310.00 | FAX-TX-KM |
| 已结算 | PS201201050061 | 1/11/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201201090051 | 1/17/2012 | 71512 | 2 | ￥ 150.00 | ￥ 300.00 | FAX-LS-TH |
| 已结算 | PS201201130045 | 2/7/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201202020005 | 2/7/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201202260041 | 3/9/2012 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201202140089 | 3/9/2012 | 73113 | 4 | ￥ 155.00 | ￥ 620.00 | FAX-TX-KM |
| 已结算 | PS201202200033 | 3/9/2012 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201202210160 | 3/9/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201202140045 | 3/9/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201202150046 | 3/9/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201202220111 | 3/9/2012 | 71512 | 3 | ￥ 150.00 | ￥ 450.00 | FAX-LS-TH |
| 已结算 | PS201202230154 | 3/9/2012 | 71512 | 3 | ￥ 150.00 | ￥ 450.00 | FAX-LS-TH |
| 已结算 | PS201203080105 | 3/23/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201203080135 | 3/23/2012 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201203100147 | 3/23/2012 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201203130090 | 3/23/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201203070116 | 3/23/2012 | 71512 | 7 | ￥ 150.00 | ￥ 1,050.00 | FAX-LS-TH |
| 已结算 | PS201203190048 | 3/27/2012 | 71512 | 5 | ￥ 150.00 | ￥ 750.00 | FAX-LS-TH |
| 已结算 | PS201203230086 | 3/29/2012 | 73113 | 2 | ￥ 155.00 | ￥ 310.00 | FAX-TX-KM |
| 已结算 | PS201203260074 | 4/6/2012 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201203280114 | 4/6/2012 | 71512 | 1 | ￥ 150.00 | ￥ 150.00 | FAX-LS-TH |
| 已结算 | PS201203290113 | 4/9/2012 | 73113 | 1 | ￥ 155.00 | ￥ 155.00 | FAX-TX-KM |
| 已结算 | PS201203300039 | 4/9/2012 | 71512 | 6 | ￥ 150.00 | ￥ 900.00 | FAX-LS-TH |
| 已结算 | PS201203300132 | 4/9/2012 | 71512 | 2 | ￥ 150.00 | ￥ 300.00 | FAX-LS-TH |

| 已结算 | PS201204020079 | 4/12/2012 | 73113 | 1 | ￥ 155.00 | ￥ | 155.00 | FAX-TX-KM |
|---|---|---|---|---|---|---|---|---|
| 已结算 | PS201204060095 | 4/13/2012 | 71512 | 8 | ￥ 150.00 | ￥ | 1,200.00 | FAX-LS-TH |
| 已结算 | PS201204120054 | 4/19/2012 | 71512 | 4 | ￥ 150.00 | ￥ | 600.00 | FAX-LS-TH |
| 汇总 | | | | **70** | | ￥ | **10,600.00** | |

# EXHIBIT F - ePRO INTERIM RESULTS



## EPRO LIMITED

## 易 寶 有 限 公 司 *

*(Incorporated in the Cayman Islands with limited liability)*

(Stock Code: 8086)

## INTERIM RESULTS ANNOUNCEMENT
## FOR THE SIX MONTHS ENDED 31 DECEMBER 2011

**Characteristics of The Growth Enterprise Market (the "GEM") of The Stock Exchange of Hong Kong Limited (the "Stock Exchange")**

**GEM has been positioned as a market designed to accommodate companies to which a higher investment risk may be attached than other companies listed on the Stock Exchange. Prospective investors should be aware of the potential risks of investing in such companies and should make the decision to invest only after due and careful consideration. The greater risk profile and other characteristics of GEM mean that it is a market more suited to professional and other sophisticated investors.**

**Given the emerging nature of companies listed on GEM, there is a risk that securities traded on GEM may be more susceptible to high market volatility than securities traded on the Main Board of the Stock Exchange and no assurance is given that there will be a liquid market in the securities traded on GEM.**

*Hong Kong Exchanges and Clearing Limited and The Stock Exchange take no responsibility for the contents of this announcement, make no representation as to its accuracy or completeness and expressly disclaim any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this announcement.*

*This announcement, for which the directors of the Company collectively and individually accept full responsibility, includes particulars given in compliance with the GEM Listing Rules for the purpose of giving information with regard to the Company. The directors of the Company, having made all reasonable enquiries, confirm that to the best of their knowledge and belief the information contained in this announcement is accurate and complete in all material respects and not misleading or deceptive and there are no other matters the omission of which would make any statement herein or this announcement misleading.*

---

\*   *For identification purposes only*

**UNAUDITED RESULTS**

The board of directors (the "Directors") of EPRO LIMITED (the "Company") announced the interim unaudited consolidated results of the Company and its subsidiaries (the "Group") for the three months and six months ended 31 December 2011 together with the comparative unaudited figures for the corresponding period in 2010 as follows:

**Unaudited Consolidated Income Statement**

| | Notes | For the three months ended 31 December | | For the six months ended 31 December | |
|---|---|---|---|---|---|
| | | **2011** HK$'000 | 2010 HK$'000 | **2011** HK$'000 | 2010 HK$'000 |
| **REVENUE** | 2 | **398,857** | 42,790 | **754,808** | 73,683 |
| Cost of sales | | **(224,887)** | (22,568) | **(430,761)** | (40,051) |
| | | | | | |
| Gross Profit | | **173,970** | 20,222 | **324,047** | 33,632 |
| Other income and gains | | **2,627** | 556 | **2,700** | 612 |
| Selling and distribution costs | | **(109,067)** | (77) | **(204,903)** | (234) |
| Administrative and other expenses | | **(28,882)** | (5,804) | **(38,373)** | (11,394) |
| Finance costs | 3 | **–** | (2,191) | **(30)** | (3,826) |
| Share of profits and losses of associates | | **(57)** | – | **(92)** | – |
| | | | | | |
| **PROFIT BEFORE TAX** | 4 | **38,591** | 12,706 | **83,349** | 18,790 |
| Income tax expense | 5 | **(6,124)** | (200) | **(13,384)** | (200) |
| | | | | | |
| **PROFIT FOR THE PERIOD** | | **32,467** | 12,506 | **69,965** | 18,590 |
| | | | | | |
| Attributable to: | | | | | |
| Owners of the Company | | **32,527** | 12,506 | **70,061** | 18,590 |
| Non-controlling interests | | **(60)** | – | **(96)** | – |
| | | **32,467** | 12,506 | **69,965** | 18,590 |
| | | | | | |
| **EARNING PER SHARE ATTRIBUTABLE TO ORDINARY EQUITY HOLDERS OF THE COMPANY** | 7 | | | | |
| Basic | | **0.60 cents** | 0.86 cents | **1.30 cents** | 1.84 cents |
| Diluted | | **0.60 cents** | 0.81 cents | **1.30 cents** | 1.61 cents |

**Unaudited Consolidated Statement of Comprehensive Income**

| | For the three months ended 31 December | | For the six months ended 31 December | |
| --- | --- | --- | --- | --- |
| | **2011** | 2010 | **2011** | 2010 |
| | **HK$'000** | HK$'000 | **HK$'000** | HK$'000 |
| Profit for the period | **32,467** | 12,506 | **69,965** | 18,590 |
| Other comprehensive income for the period, net of tax: | | | | |
| Available-for-sales investments: | | | | |
| Changes in fair value | **2,828** | – | **(3,310)** | – |
| Reclassification adjustments for losses included in the consolidated income statement – loss on redemption *(note 4)* | **3,024** | – | **3,024** | – |
| Exchange difference arising on translation of foreign operations | **(291)** | (606) | **(619)** | (945) |
| **TOTAL COMPREHENSIVE INCOME FOR THE PERIOD** | **38,028** | 11,900 | **69,060** | 17,645 |
| Total comprehensive income attributable to: | | | | |
| Owners of the Company | **38,088** | 11,900 | **69,156** | 17,645 |
| Non-controlling interests | **(60)** | – | **(96)** | – |
| | **38,028** | 11,900 | **69,060** | 17,645 |

**Condensed Consolidated Statement of Financial Position**

| | Notes | (Unaudited) 31 December 2011 HK$'000 | (Audited) 30 June 2011 HK$'000 |
|---|---|---|---|
| **NON-CURRENT ASSETS** | | | |
| Property, plant and equipment | | 5,758 | 56,090 |
| Goodwill | | 11,918 | – |
| Intangible assets | | 22,776 | – |
| Interest in associates | | 375 | 467 |
| Available-for-sales investments | | – | 51,012 |
| Total non-current assets | | 40,827 | 107,569 |
| **CURRENT ASSETS** | | | |
| Inventories | | 354 | 3 |
| Trade receivables | 8 | 54,557 | 72,977 |
| Prepayments, deposits and other receivables | | 87,508 | 7,289 |
| Equity investments at fair value through profit or loss | | 3,061 | 1,929 |
| Pledged deposits | | 14,402 | 3,524 |
| Cash and cash equivalents | | 178,741 | 200,484 |
| Total current assets | | 338,623 | 286,206 |
| **CURRENT LIABILITIES** | | | |
| Trade payables | 9 | 7,458 | 2,825 |
| Other payables and accruals | | 40,730 | 10,806 |
| Deferred revenue | | 342 | 537 |
| Tax payables | | 18,184 | 4,800 |
| Total current liabilities | | 66,714 | 18,968 |
| **Net current assets** | | 271,909 | 267,238 |
| **Total assets less current liability** | | 312,736 | 374,807 |
| **NON-CURRENT LIABILITIES** | | | |
| Convertible notes | 10 | – | 10,567 |
| Deferred tax liabilities | | 1,900 | 1,900 |
| Total non-current liabilities | | 1,900 | 12,467 |
| **Net assets** | | 310,836 | 362,340 |
| **EQUITY** | | | |
| Equity attributable to owners of the Company | | | |
| Issued capital | 11 | 53,786 | 52,115 |
| Reserves | | 255,646 | 246,095 |
| Proposed final dividends | | – | 62,630 |
| | | 309,432 | 360,840 |
| Non-controlling interests | | 1,404 | 1,500 |
| **Total equity** | | 310,836 | 362,340 |

**Unaudited Condensed Consolidated Statement of Cash Flows**

| | For the six months ended 31 December | |
|---|---|---|
| | **2011** | 2010 |
| | **HK$'000** | HK$'000 |
| **NET CASH FLOW FROM FROM OPERATING ACTIVITIES** | **58,020** | 2,756 |
| **NET CASH FLOW FROM/(USED IN) INVESTING ACTIVITIES** | **52,582** | (435) |
| **NET CASH FLOW (USED IN)/FROM FINANCING ACTIVITIES** | **(131,160)** | 242,953 |
| **NET (DECREASE)/INCREASE IN CASH AND CASH EQUIVALENTS** | **(20,558)** | 245,274 |
| **CASH AND CASH EQUIVALENTS AT BEGINNING OF THE PERIOD** | **200,484** | 15,477 |
| **EFFECT OF FOREIGN EXCHANGE RATE CHANGES, NET** | **(1,185)** | (1,026) |
| **CASH AND CASH EQUIVALENTS AT END OF THE PERIOD** | **178,741** | 259,725 |
| **ANALYSIS OF BALANCES OF CASH AND CASH EQUIVALENTS** | | |
| Cash and bank balances | **178,741** | 257,725 |
| Non-pledged time deposits with original maturity of less than three months when acquired | **–** | 2,000 |
| | **178,741** | 259,725 |

## Unaudited Condensed Consolidated Statement of Changes In Equity

| | Issued capital HK$'000 | Share premium account HK$'000 | Option reserve HK$'000 | Equity component of convertible notes HK$'000 | Available-for-sales investment revaluation reserve HK$'000 | Share repurchase reserve HK$'000 | Exchange fluctuation reserve HK$'000 | Retained profits/ (accumulated losses) HK$'000 | Proposed final dividends HK$'000 | Total HK$'000 | Non-controlling Interests HK$'000 | Total Equity HK$'000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance at 1 July 2010 | 33,617 | 12,210 | 2,436 | 2,621 | – | – | (5,084) | (13,083) | – | 32,717 | – | 32,717 |
| Total comprehensive income for the period | – | – | – | – | – | – | (945) | 18,590 | – | 17,645 | – | 17,645 |
| Reduction of capital | (30,255) | – | – | – | – | – | – | 30,255 | – | – | – | – |
| Issue of shares, net of share issue expenses | 4,000 | 13,955 | – | – | – | – | – | – | – | 17,955 | – | 17,955 |
| Issue of convertible notes | – | – | – | 26,421 | – | – | – | – | – | 26,421 | – | 26,421 |
| Issue of shares on conversion of convertible notes | 42,847 | 189,214 | – | (26,565) | – | – | – | – | – | 205,496 | – | 205,496 |
| At 31 December 2010 | 50,209 | 215,379 | 2,436 | 2,477 | – | – | (6,029) | 35,762 | – | 300,234 | – | 300,234 |
| Balance at 1 July 2011 | 52,115 | 223,488 | 2,231 | 1,360 | 286 | – | (7,262) | 25,992 | 62,630 | 360,840 | 1,500 | 362,340 |
| Total comprehensive income for the period | – | – | – | – | (286) | – | (619) | 70,061 | – | 69,156 | (96) | 69,060 |
| Exercise of share options | 29 | 2,907 | (1,698) | – | – | – | – | – | – | 1,238 | – | 1,238 |
| Issue of shares on conversion of convertible notes | 2,317 | 9,640 | – | (1,360) | – | – | – | – | – | 10,597 | – | 10,597 |
| Repurchase and cancellation of shares | (675) | (69,870) | – | – | – | 675 | – | (675) | – | (70,545) | – | (70,545) |
| Final 2011 dividend paid | – | – | – | – | – | – | – | – | (61,854) | (61,854) | – | (61,854) |
| Adjustment for final 2011 dividend (note (a)) | – | – | – | – | – | – | – | 776 | (776) | – | – | – |
| At 31 December 2011 | 53,786 | 166,165 | 533 | – | – | 675 | (7,881) | 96,154 | – | 309,432 | 1,404 | 310,836 |

*Note:*

(a)    The adjustment for the final 2011 dividend was due to the repurchase and cancellation of 67,500,000 ordinary shares of the Company prior to the record date of the final 2011 dividend and, therefore, they did not rank for dividend payment.

*Notes:*

1.   **BASIS OF PRESENTATION**

The Company is a limited liability company incorporated in the Cayman Islands on 15 March 2000 under the Companies Law, of the Cayman Islands. The shares of the Company were listed on the Growth Enterprise Market (the "GEM") of the Stock Exchange of Hong Kong Limited (the "Stock Exchange") on 2 August 2000.

The unaudited condensed consolidated interim financial statements have been prepared in accordance with the Hong Kong Accounting Standard ("HKAS") 34 "Interim Financial Reporting" issued by the Hong Kong Institute of Certified Public Accountants ("HKICPA"), and the disclosure requirements of the Hong Kong Companies Ordinance and the Rules Governing the Listing of Securities on GEM of the Stock Exchange (the "GEM Listing Rules"). They have been prepared under the historical cost convention, except for financial instruments, which have been measured at fair value.

The accounting policies adopted in the preparation of the unaudited consolidated interim report are consistent with those adopted by the Group in its annual accounts for the year ended 30 June 2011.

**Accounting Policies**

During the current period, the Group has applied for the first time, the following new and revised HKFRSs standards, amendments and interpretations issued by HKICPA, which are relevant to the Group's operations and effective for the Group's financial statement beginning on 1 July 2011:

| | |
|---|---|
| HKFRS 1 Amendments | Severe Hyperinflation and Removal of Fixed Dates for First-time Adopters |
| HKFRS 7 Amendments | *Disclosures – Transfers of Financial Assets* |
| HKAS 24 (Revised in 2009) | *Related Party Disclosures* |
| HK(IFRIC)-Int 14 Amendments | *Prepayments of a Minimum Funding Requirement* |

The adoption of the new and amended HKFRSs had no material effect on how the results for the current or prior accounting periods have been prepared and presented. Accordingly, no prior period adjustment is required.

**Impact of issued but not yet effective Hong Kong Financial Reporting Standards**

The Group has not applied the following new and revised HKFRSs, that have been issued but are not yet effective, in these financial statements.

| HKFRS 9 | *Financial Instruments* [3] |
| HKFRS 10 | *Consolidated Financial Statement* [3] |
| HKFRS 11 | *Joint Arrangement* [3] |
| HKFRS 12 | Disclosure of Interests in other entities [3] |
| HKFRS 13 | Fair Value Measurement [3] |
| HKAS 1 Amendments | *Presentation of items of other comprehensive income* [2] |
| HKAS 12 Amendments | *Deferred tax: Recovery of Underlying Assets* [1] |
| HKAS 19 (Revised in 2011) | *Employee Benefits* [3] |
| HKAS 27 (Revised in 2011) | *Separate Financial Statement* [3] |
| HKAS 28 (Revised in 2011) | *Investments in Associate and Joint Ventures* [3] |
| HK(IFRIC)-Int 20 | *Stripping Costs in the Production Phase of a Surface Mine* [3] |

[1]    Effective for annual periods beginning on or after 1 January 2012

[2]    Effective for annual periods beginning on or after 1 July 2012

[3]    Effective for annual periods beginning on or after 1 January 2013

The Group is in the process of making an assessment of the impact of these new and revised HKFRSs upon initial application. So far, the Group considers that the adoption of these new and revised HKFRSs are unlikely to have a significant impact on the Group's results of operations and financial position.

2.    **REVENUE AND OPERATING SEGMENT INFORMATION**

Revenue, which is also the Group's turnover, represents the net invoiced value of professional IT contract services and maintenance services rendered and re-selling of hardware and software, and the extended E-commerce business for the period.

The directors of the Company are of the opinion that no business segments information is presented in these financial statements as over 90% of the Group's revenue is generated from its E-commerce business during the six months ended 31 December 2011 (2010: Over 90% of the Group's revenue was generated from its provision of professional IT contract services).

**Geographical information**

The following table presents turnover information for the Group's geographical information.

| | Hong Kong | | People's Republic of China ("PRC") except Hong Kong | | Singapore | | Others | | Consolidated | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **2011** (Unaudited) **HK$'000** | 2010 (Unaudited) HK$'000 | **2011** (Unaudited) **HK$'000** | 2010 (Unaudited) HK$'000 | **2011** (Unaudited) **HK$'000** | 2010 (Unaudited) HK$'000 | **2011** (Unaudited) **HK$'000** | 2010 (Unaudited) HK$'000 | **2011** (Unaudited) **HK$'000** | 2010 (Unaudited) HK$'000 |
| Segment revenue: | | | | | | | | | | |
| Sales to external customers | **8,108** | 27,852 | **745,421** | 44,686 | **1,279** | 1,145 | **–** | – | **754,808** | 73,683 |

For the six months ended 31 December

3.   **FINANCE COSTS**

| | For the three months ended 31 December | | For the six months ended 31 December | |
|---|---|---|---|---|
| | **2011** | 2010 | **2011** | 2010 |
| | **(Unaudited)** | (Unaudited) | **(Unaudited)** | (Unaudited) |
| | **HK$'000** | HK$'000 | **HK$'000** | HK$'000 |
| Interest expenses on bank loans and overdrafts | **–** | – | **–** | – |
| Notional interest on convertible notes at effective interest rate | **–** | 2,191 | **30** | 3,826 |
| Total finance costs | **–** | 2,191 | **30** | 3,826 |

4.   **PROFIT BEFORE TAX**

Profit before tax is arrived at after charging/(crediting):

| | For the three months ended 31 December | | For the six months ended 31 December | |
|---|---|---|---|---|
| | **2011** | 2010 | **2011** | 2010 |
| | **(Unaudited)** | (Unaudited) | **(Unaudited)** | (Unaudited) |
| | **HK$'000** | HK$'000 | **HK$'000** | HK$'000 |
| Depreciation | **775** | 386 | **1,606** | 789 |
| Staff costs (including directors' remuneration) | | | | |
| Wages and salaries | **4,505** | 2,244 | **7,360** | 4,344 |
| Net pension contribution | **356** | 156 | **508** | 280 |
| Fair value loss/(gain) on equity investments at fair value through profit and loss | | | | |
| – Listed equity investment | **23** | (61) | **34** | (91) |
| – Forward currency contract | **(1,166)** | – | **(1,166)** | – |
| Loss on redemption of an available-for-sales investments | **3,024** | – | **3,024** | – |
| Gain on disposal of land and building | **(1,236)** | – | **(1,236)** | – |
| Bank interest income | **(18)** | (38) | **(48)** | (61) |

5.    **INCOME TAX EXPENSE**

| | For the three months ended 31 December | | For the six months ended 31 December | |
|---|---|---|---|---|
| | **2011** | 2010 | **2011** | 2010 |
| | **(Unaudited)** | (Unaudited) | **(Unaudited)** | (Unaudited) |
| | **HK$'000** | HK$'000 | **HK$'000** | HK$'000 |
| Current tax: | | | | |
| Hong Kong profits tax: | | | | |
| Current period | **6,124** | – | **13,384** | – |
| Overseas taxation: | | | | |
| Provision for the period | **–** | 200 | **–** | 200 |
| Total income tax expense | **6,124** | 200 | **13,384** | 200 |

Hong Kong Profits tax has been provided at the rate of 16.5% on the estimated assessable profits for the period (2010: No Hong Kong profits tax has been provided as the Group had available tax losses brought forward to offset the assessable profits generated during the period).

Taxes on profits in respect of Group companies operating elsewhere have been calculated at the rates of tax prevailing in the respective tax countries/jurisdictions in which they operate based on existing legislation, interpretations and practices in respect thereof.

The Group did not have any significant unprovided deferred tax liabilities for the six months ended 31 December 2011 (2010: Nil).

6.    **DIVIDENDS**

The Directors do not recommend the payment of interim dividend (2010: Nil).

7.    **EARNING PER SHARE ATTRIBUTABLE TO ORDINARY EQUITY HOLDERS OF THE COMPANY**

The calculations of basic and diluted earning per share are based on:

| | For the three months ended 31 December | | For the six months ended 31 December | |
|---|---|---|---|---|
| | **2011** | 2010 | **2011** | 2010 |
| | **(Unaudited)** | (Unaudited) | **(Unaudited)** | (Unaudited) |
| | **HK$'000** | HK$'000 | **HK$'000** | HK$'000 |
| Profit attributable to ordinary equity holders of the Company, used in the basic earnings per share calculations | **32,527** | 12,506 | **70,061** | 18,590 |
| Notional interest on convertible notes | **–** | 203 | **30** | 316 |
| Profit for the purposes of diluted earnings per share | **32,527** | 12,709 | **70,091** | 18,906 |

10

|  | Numbers of shares | | | |
|  | For the three months ended 31 December | | For the six months ended 31 December | |
|  | 2011 | 2010 | 2011 | 2010 |
|  | (Unaudited) | (Unaudited) | (Unaudited) | (Unaudited) |
| Shares | | | | |
| Weighted average number of ordinary shares in issue during the period used in the basic earnings per share calculation | 5,403,097,613 | 1,459,161,961 | 5,392,709,027 | 1,008,534,546 |
| Effect of dilutive potential ordinary shares | | | | |
| – convertible notes | – | 106,343,178 | 14,676,149 | 166,450,192 |
| – share options | 158,202 | 596,098 | 455,094 | 1,060,457 |
| Weighted average number of ordinary shares for the purpose of diluted earnings per share | 5,403,255,815 | 1,566,101,237 | 5,407,840,270 | 1,176,045,195 |

8.    **TRADE RECEIVABLES**

|  | 31 December 2011 (Unaudited) HK$'000 | 30 June 2011 (Audited) HK$'000 |
|  | --- | --- |
| Trade receivables | 56,520 | 74,913 |
| Impairment | (1,963) | (1,936) |
|  | 54,557 | 72,977 |

An aged analysis of trade receivables as at the end of the reporting period, based on invoice date and payment due date, respectively, is as follows:

|  | 31 December 2011 (Unaudited) HK$'000 | 30 June 2011 (Audited) HK$'000 |
|  | --- | --- |
| Current | 52,443 | 64,036 |
| 31-60 days | 1,064 | 6,204 |
| 61-90 days | 49 | 816 |
| Over 90 days | 1,001 | 1,921 |
|  | 54,557 | 72,977 |

The credit terms given to the customers vary, and are generally around three months and granted based on the financial strength of the individual customers. In order to effectively manage the credit risks associated with trade debtors, credit evaluations of customers are performed periodically by management.

9.    **TRADE PAYABLES**

An aged analysis of trade payables as at the end of the reporting period, based on payment due date, respectively, is as follows:

|  | **31 December 2011 (Unaudited)** *HK$'000* | 30 June 2011 (Audited) *HK$'000* |
|---|---|---|
| Current | **5,966** | 1,738 |
| 31-60 days | **246** | 10 |
| 61-90 days | **–** | 227 |
| Over 90 days | **1,246** | 850 |
|  | **7,458** | 2,825 |

10.    **CONVERTIBLE NOTES**

On 22 July 2009, the Company issued two zero coupon convertible notes (collectively, referred to as "CN1") with an aggregate principal amount of HK$25,000,000. CN1 does not bear interest, is convertible into the shares of the Company at a conversation price of HK$0.121 per share and with maturity date of two years from the date of issuance. During the year ended 30 June 2011, CN1 has been fully converted into 206,611,570 ordinary shares of the Company.

On 10 August 2010, the Company issued two zero coupon convertible notes (collectively, referred to as "CN2") with an aggregate principal amount of HK$225,000,000. CN2 does not bear interest, is convertible into the shares of the Company at a conversation price of HK$0.05 per share and with maturity date of three years from the date of issuance. During the year ended 30 June 2011, CN2 with aggregate principal amount of approximately HK$213,416,000 had been converted into 4,268,320,000 ordinary shares of the Company. The remaining CN2 of approximately HK$11,584,000 were also converted into 231,680,000 ordinary shares of the Company during at the end of the reporting period.

The principal amount of CN1 and CN2 have been split between the liability components and equity components, as follows:

|  | 31 December 2011 (Unaudited) HK$'000 | 30 June 2011 (Audited) HK$'000 |
|---|---|---|
| **Liability component** | | |
| At the beginning of the period/year | **10,567** | 23,046 |
| Liability component of convertible notes at date of issue | **–** | 198,446 |
| Direct transaction costs attributable to the liability component | **–** | (992) |
| National interest charged | **30** | 4,084 |
| Converted into ordinary shares of the Company | **(10,597)** | (214,017) |
| At end of period/year | **–** | 10,567 |
| **Equity component** | | |
| At the beginning of period/year | **1,360** | 2,621 |
| Equity component of convertible notes at date of issue | **–** | 26,554 |
| Direct transaction costs attributable to the equity component | **–** | (133) |
| Converted into ordinary shares of the Company | **(1,360)** | (27,682) |
| At end of period/year | **–** | 1,360 |

Imputed interest expense on CN1 and CN2 are calculated using the effective interest method by applying the effective interest rates of 7.536% and 4.361% per annum respectively to the liability component.

## 11.   SHARE CAPITAL

|  | Notes | (Audited) Number of Shares | Nominal Value HK$'000 |
|---|---|---|---|
| **Authorised:** |  |  |  |
| Ordinary shares of HK$0.1 each at 1 July 2010 |  | 10,000,000,000 | 1,000,000 |
| Capital reduction | (a) | – | (900,000) |
| Ordinary shares of HK$0.01 each at 30 June 2011 |  | 10,000,000,000 | 100,000 |
| **Issued and fully paid:** |  |  |  |
| Ordinary shares of HK$0.1 each at 1 July 2010 |  | 336,168,000 | 33,617 |
| Capital reduction | (a) | – | (30,255) |
| Issue of shares | (b) | 400,000,000 | 4,000 |
| Exercise of share options | (c) | 400,000 | 4 |
| Conversion of shares from convertible notes | (d) | 4,474,931,570 | 44,749 |
| Ordinary shares of HK$0.01 each at 30 June 2011 |  | 5,211,499,570 | 52,115 |

|  | Notes | (Unaudited) Number of Shares | Nominal Value HK$'000 |
|---|---|---|---|
| **Authorised:** |  |  |  |
| Ordinary shares of HK$0.01 each as at 1 July 2011 and 31 December 2011 |  | 10,000,000,000 | 100,000 |
| **Issued and fully paid:** |  |  |  |
| Ordinary shares of HK$0.01 each as at 1 July 2011 |  | 5,211,499,570 | 52,115 |
| Exercise of share options | (e) | 2,880,000 | 29 |
| Conversion of shares from convertible notes | (f) | 231,680,000 | 2,317 |
| Repurchase and cancellation of shares | (g) | (67,500,000) | (675) |
| As at 31 December 2011 |  | 5,378,559,570 | 53,786 |

14

(a)   Pursuant to a special resolution passed on 18 June 2010, the nominal value of all issued and unissued shares in the share capital of the Company was reduced from HK$0.10 to HK$0.01 per share (the "Capital Reduction"). The authorised share capital of the Company of HK$1,000,000,000 divided into 10,000,000,000 shares of HK$0.10 each had then been reduced to HK$100,000,000 divided into 10,000,000,000 shares of HK$0.01 each. The issued share capital of the Company at that time of HK$33,616,800 had been reduced to HK$3,361,680 as a result of the reduction in par value of the shares in issue and the credit of HK$30,255,120 arising from the Capital Reduction was eliminated against the accumulated losses of the Company. The Capital Reduction was completed on 26 July 2010.

(b)   On 30 April 2010, the Company entered into a subscription agreement (the "Subscription Agreement") with ChangAn investment Holdings II Limited and Innopac Holdings Limited (collectively the "Investors"). Pursuant to the Subscription Agreement, the Company conditionally agreed to allot and issue to the Investors (i) an aggregate of 400,000,000 subscription shares (the "Subscription Shares") at HK$0.05 per share for a total consideration of HK$20 million, and (ii) convertible notes with an aggregate principal amount of HK$225 million. On 10 August 2010, 400,000,000 Subscription Shares were issued.

(c)   During the year ended 30 June 2011, a share option holder exercised his option rights to subscribe for an aggregate of 400,000 ordinary shares of the Company of HK$0.01 each at an exercise price of HK$0.43 per share.

(d)   (i)    During the year ended 30 June 2011, convertible notes with principal amount of HK$25,000,000 ("CN1") were converted into 206,611,570 ordinary shares of the Company of HK$0.01 each at a conversion price of HK$0.121 per share; and

(ii)   Pursuant to the Subscription Agreement, the Group issued another convertible notes with principal amount of HK$225,000,000 ("CN2") during the year ended 30 June 2011, of which HK$213,416,000 has been converted into 4,268,320,000 ordinary shares of the Company of HK$0.01 each at a conversion price of HK$0.05 per share.

(e)   During the six months ended 31 December 2011, a share option holder exercised his option rights to subscribe for an aggregate of 2,880,000 ordinary shares of the Company of HK$0.01 each at an exercise price of HK$0.43 per share.

(f)   During the six months ended 31 December 2011, the remaining CN2 with principal amount of HK$11,584,000 has been converted into 231,680,000 ordinary shares of the Company of HK$0.01 each at a conversion price of HK$0.05 per share.

(g)   During the six months ended 31 December 2011, 67,500,000 ordinary shares of the Company of HK$0.01 each were repurchased and cancelled by the Company for a total cash consideration of approximately HK$70,545,000.

12.   **OPERATING LEASE ARRANGEMENTS**

The Group leases certain of its office properties and staff quarters under operating lease arrangements. Such leases are negotiated for terms ranging from one to three years.

At 31 December 2011, the Group had total future minimum lease payments under non-cancellable operating leases falling due as follows:

|  | As at 31 December | |
| --- | --- | --- |
|  | **2011** | 2010 |
|  | **(Unaudited)** | (Unaudited) |
|  | **HK$'000** | HK$'000 |
| Not later than 1 year | **2,847** | 2,298 |
| Later than 1 year and not later than 5 years | **545** | 1,630 |
|  | **3,392** | 3,928 |

13.   **CAPITAL COMMITMENTS**

At 31 December 2011, the Group had no capital commitments:

|  | As at 31 December | |
| --- | --- | --- |
|  | **2011** | 2010 |
|  | **(Unaudited)** | (Unaudited) |
|  | **HK$'000** | HK$'000 |
| Contracted but not provided for balance of acquisition of properties | **–** | 45,000 |

14.   **COMPARATIVE FIGURES**

Certain comparative figures have been reclassified to conform with the current period's presentation.

**FINANCIAL REVIEW**

For the six months ended 31 December 2011 (the "Period"), the Group recorded an unaudited consolidated revenue of approximately HK$754,808,000 (2010: approximately HK$73,683,000). During the Period, the Group established two main business units: e-commerce and professional IT contract services. Among which, e-commerce business sector sustained a strong growth, driving the revenue of the Group in the first half year. At present, the Group is operating several e-commerce platforms. Starting from the 1st quarter of 2011/12, the Group had been focusing on B2C (Business-to-Customer) by operating DealExtreme.com and DX.com, as well as B2B (Business-to-Business) foreign trade e-commerce through MadeInChina.com. Through these online platforms, millions of high quality and moderate price China-made products were sold worldwide. The thriving e-commerce business enabled the Group to achieve sound results once again under the volatile global economic conditions. At the same time, the Group's professional IT contract services remained stable and continued to contribute to the Group's revenue. Faced the unstable global economy, the Group had completed the redemption of investment funds in Murtsa Fund and the sale of properties during the Period after prudent consideration, which recorded a net loss of approximately HK$3,000,000 and a profit of about HK$1,200,000 respectively. During the Period, the Group recorded an unaudited profit of approximately HK$69,965,000 (2010: approximately HK$18,590,000).

During the Period under review, the increase in cost of sales was mainly attributed to the rise in e-commerce business revenue. The increase in selling and distribution costs was mainly due to the transportation, packaging and other related expenses derived from the e-commerce business operation. In line with the e-commerce business development, the Group allocated additional budget to marketing and promotion and recruited more e-commerce management staff which resulted in an increase in administrative and other expenses during the Period. The cost of financing was reduced because the convertible notes were converted into the Company's shares and the projected non-cash interest of convertible notes was lower.

**BUSINESS REVIEW**

2011 saw global economic challenges: the deteriorating European sovereign debt crisis plagued the entire European Union system, the stalling U.S. economic recovery, the slowdown in the PRC's economic growth and so forth. These factors cast a cloud of uncertainties over the global economy. Under such a severe economic climate, the Group managed to enhance its value by capitalizing the competitive edges of e-commerce websites. Through shortening the supply chain, China-manufactured products were sold to global consumers directly. This mode of trading gained market recognition as it enhanced the efficiency of merchandizing and lowered the purchasing costs.

**B2C E-commerce Websites**

The revenue of the Group still recorded a considerable growth despite global economic uncertainties, which was mainly attributable to the Group's strong sales network established by DealExtreme.com and DX.com. Our e-commerce business's existing customer base covers more than 200 countries and regions, where the potential risks of relying on one single market could be greatly diversified as the impact of any incident in a particular market to the overall revenue would be insignificant. In the meantime, the Group recorded an outstanding sales growth in certain BRICS members and other developing countries, especially in Brazil, Russia, Israel and other countries with a more rapid economic growth rate. The local consumers in these countries demonstrated a steady demand for high quality and competitive price products from the PRC. The great room for development in online shopping platforms had been the driving force of the Group's revenue growth.

Further, the Group set up local cargo transit centres in Britain, the U.S., Australia and other countries in 2011. Since then, the Group has a more precise control over the supply chain in the e-commerce business, thereby improving the accuracy of resources allocation and the efficiency of product delivery that enhancing the customer shopping experience. Hence, the market share and competitive advantage of the Group are expected to be further developed.

**B2B E-commerce Website**

MadeInChina.com, the B2B e-commerce website operated by the Group, officially launched the development plan on B2B foreign trades with small-scale wholesalers and retailers. The realization of economies of scales and the integration of supply resources contributed to the further increase in revenue. The establishment of B2B e-commerce website by the Group not only assisted the manufacturers in the PRC to open up international retail channels, but also provided overseas wholesalers an opportunity to gain price advantage. At present, although the macroeconomic outlook remains uncertain, the Group believes that small-scale wholesale and retail e-commerce has great potential for development as high quality and yet moderate price products have always been well received by customers locally and abroad.

**PROSPECTS**

Despite global economic upheaval, we believe that the number of online shoppers will continue to increase in the upcoming years. This can be seen as more and more people are using the internet as technology advances, coupled with the expanse for growth in the internet penetration rate in developing countries. Same as traditional shopping at retail stores, online shopping will gradually become a regular shopping habit. The Group adheres closely to its operation motto, "Striving for the best while creating a solid foundation". With the solid clientele built by the Group's online shopping platforms and our seasoned management team with years of experience in e-commerce, we are constantly motivated to enhance the shopping experience of our customers and to develop mobile e-commerce. Concurrently, we are actively expanding our market share, promoting our online platforms and increasing our market penetration in the local

markets over the world. In the seamless internet world, we believe there are numerous opportunities for success. Looking forward, the Group is confident that our e-commerce sector will continue to have growth momentum, bringing the Group to achieve continual success in our future business performance.

## LIQUIDITY, FINANCIAL RESOURCES AND GEARING RATIO

During the period under review, the Group financed its operations by internally generated cash flow, convertible notes and banking facilities provided by banks.

As at 31 December 2011, the Group's consolidated shareholders' equity, current assets and net current assets were HK$310,836,000 (as at 30 June 2011: HK$362,340,000), HK$338,623,000 (as at 30 June 2011: HK$286,206,000) and HK$271,909,000 (as at 30 June 2011: HK$267,238,000) respectively.

In respect of the Group's current assets of HK$338,623,000 as at 31 December 2011 (as at 30 June 2011: HK$286,206,000), trade receivable (net of provision for doubtful debts) account for 16.1% (as at 30 June 2011: 25.5%) whilst pledged deposits, cash and cash equivalents accounted for about 57.0% (as at 30 June 2011: 71.3%). As at 31 December 2011, the Group's pledged deposits and cash and cash equivalents amounted to HK$193,143,000 (as at 30 June 2011: HK$204,008,000). All of the Group's pledged deposits and cash and cash equivalents were denominated in Australian dollars, Hong Kong dollars, Canadian dollars, pound Sterling, Renminbi, Singapore dollars and United States dollars.

As at 31 December 2011, the Company had no outstanding convertible notes (as at 30 June 2011: HK$10.6 million).

As at 31 December 2011, the Group had no consolidated bank and other loans (as at 30 June 2011: Nil).

As at 31 December 2011, the Group had an aggregate composite banking facilities from banks of approximately HK$160 million of which has not been utilised (as at 30 June 2011: Nil).

## GEARING RATIO

As at 31 December 2011, the gearing ratio of the Group as a ratio of total liabilities over total assets was 18.1% (as at 30 June 2011: 8.0%).

## CAPITAL STRUCTURE

The Group generally finances its operation with internally generated cash flows, convertible notes and banking facilities. The Group continued to exert stringent control over treasury policies. The Company intends to finance the Group's future operations, capital expenditure and other capital requirement with the existing bank balance available.

As at 31 December 2011, the interest rate of banking facilities was charged at the range of Hong Kong dollar prime lending rate ("P") P+1.5% (as at 30 June 2011: P+1.5%).

As at 31 December 2011, the Group had no bank and other loans (as at 30 June 2011: Nil).

As at 31 December 2011, the remaining convertible notes of the Company with an aggregate principal amounting to approximately HK$10.6 million were converted into 231,680,000 ordinary shares of the Company.

As at 31 December 2011, the Company had repurchased and cancelled an aggregate of 67,500,000 ordinary shares. The total issued share capital of the Company changed from 5,446,059,570 to 5,378,559,570 ordinary shares of HK0.01 each.

Save as the above, the capital structure of the Group had no material change.

**MATERIAL ACQUISITIONS, DISPOSALS AND SIGNIFICANT INVESTMENTS**

(a)    On 25 October 2011, the Group had applied for the redemption of certain Available-for-sales investments. The transaction was completed on 1 December 2011 with a loss of approximately HK$3.0 million.

(b)    On 16 December 2011, the Group disposed properties to an independent third party at total consideration of HK$52.5 million with a gain of approximately HK$1.2 million.

Save as the above, the Company had no other significant investments and material acquisitions or disposals for the year ended 31 December 2011.

**CHARGES ON ASSETS**

The banking facilities of the Group are secured by:

(i)    corporate unlimited guarantees executed by the Company (as at 30 June 2011: Nil); and

(ii)    pledge of certain of the Group's time deposits amounting to approximately HK$14.4 million (as at 30 June 2011: approximately HK$3.5 million).

**CONTINGENT LIABILITIES**

As at 31 December 2011, the Company had contingent liabilities  in respect of corporate unlimited guarantees for banking facilities  granted to certain subsidiaries (as at 30 June 2011: Nil). At the end of the reporting period, none of such facilities were utilized by the subsidiaries (as at 30 June 2011: Nil).

The Group had executed performance bonds of approximately HK$0.2 million (as at 30 June 2011: approximately HK$0.2 million) in respect of certain services provided by the Group.

**FOREIGN CURRENCY RISK**

The Group mainly generated revenue and incurred costs in Australian dollars, Hong Kong dollars, Renminbi, Singapore dollars, Canadian dollars, pound sterling and United States ("US") dollars.

During the period, the Group had entered foreign exchange forward contracts for hedging the foreign currency risk exposure on making payment to the suppliers.

The Group requires all its operating units to use forward currency contracts to eliminate the foreign currency exposures for currencies other than United States dollars and on any individual transactions in excess of HK$500,000 or equivalent, for which payment is anticipated more than one month after the Group has entered into a firm commitment for a sale or purchase. The forward currency contracts must be in the same currency as the hedged item. It is the Group's policy not to enter into forward contracts until a firm commitment is in place.

As at 31 December 2011, the notional amount of the outstanding forward exchange contracts which were entered to mitigate foreign exchange risk in view of continuing appreciation of RMB was USD20.00 million.

**DEPLOYMENT OF HUMAN RESOURCES**

As at 31 December 2011, the number of staff of the Group was 1,018 (2010: 784). Staff remuneration is reviewed once a year or as the management deems appropriate. Changes in remuneration are based on a range of factors including the Group's performance, the competitiveness of remuneration with the external market, and individual employee's performance during the year. Employees were paid at fixed remuneration with discretionary bonus and benefits of medical insurance, mandatory provident fund, share options and necessary training.

**DISCLOSURE OF INTERESTS UNDER PART XV OF THE SECURITIES AND FUTURES ORDINANCE (THE "SFO")**

**A.   DIRECTORS AND CHIEF EXECUTIVES**

As at 31 December 2011, the interests and short positions of the Directors and chief executives of the Company in the shares, underlying shares and debentures of the Company or any of its associated corporations (within the meaning of Part XV of the SFO) as recorded in the register required to be kept under section 352 of the SFO; or as otherwise notified to the Company and the Stock Exchange pursuant to Rule 5.46 of the GEM Listing Rules were as follows:

1.   Aggregate long position in shares and (in respect of positions held pursuant to equity derivatives) underlying shares and in debentures of the Company and its associated corporation(s)

   a.   Interests in shares (other than pursuant to equity derivatives such as share options, warrants to subscribe or convertible bonds)

   (i)   the Company

| Number of Director | *Notes* | Capacity | Number of ordinary shares interested | Percentage of issued share capital[+] |
|---|---|---|---|---|
| Mr. HUANG Shaokang | *(a)* | Interest of a controlled corporation | 123,966,942 | 2.30% |
| Mr. MENG Hu | *(b)* | Interest of controlled corporations | 2,860,000,000 | 53.17% |
| Mr. CHEN Ling Sonny | *(c)* | Interest of a controlled corporation | 712,084,000 | 13.24% |
| Mr. CHOW Siu Kwong | | Beneficial owner | 2,880,000 | 0.05% |

*Notes:*

a.   These 123,966,942 shares of the Company were held by China Dynamic Enterprises Limited ("China Dynamic"), a corporation wholly owned by Mr. HUANG Shaokang. Accordingly, Mr. Huang was deemed to be interested in 123,966,942 shares of the Company held by China Dynamic pursuant to Part XV of the SFO.

b.　　These 2,860,000,000 shares of the Company were held by ChangAn Investment Holdings II Limited ("ChangAn Investment"), a corporation owned as to 56.25% by Wise Focus International Limited ("Wise Focus"). Wise Focus was owned as to 66.67% by Mr. MENG Hu who is also its sole director. Accordingly, Mr. MENG Hu was deemed to be interested in 2,860,000,000 shares of the Company held by ChangAn Investment pursuant to Part XV of the SFO.

c.　　These 712,084,000 shares of the Company were held by Innopac Holdings Limited ("Innopac"), a corporation wholly owned by Mr. CHEN Ling Sonny. Accordingly, Mr. Chen was deemed to be interested in 712,084,000 shares of the Company held by Innopac pursuant to Part XV of the SFO.

+　　The percentage represents the number of ordinary shares interested divided by the number of issued shares of the Company as at 31 December 2011.

(ii)　Associated corporation – ChangAn Investment (a controlled corporation of the Company)

| Name of Director | *Note* | Capacity | Number of shares interested in associated corporation | Percentage of total issued shares+ |
|---|---|---|---|---|
| Mr. MENG Hu | *(1)* | Interest of a controlled corporation | 25,875,000 | 56.25% |

*Note:*

1.　　These 25,875,000 shares of ChangAn Investment were held by Wise Focus, a corporation was owned as to 66.67% by Mr. MENG Hu who is also its sole director. Accordingly, Mr. MENG Hu was deemed to be interested in 25,875,000 shares of ChangAn Investment held by Wise Focus pursuant to Part XV of the SFO.

+　　The percentage represents the number of shares interested divided by the number of issued shares of ChangAn Investment as at 31 December 2011.

b.　　Interests in debentures

The Company or its associated corporations had not issued debentures.

c.　　Interests in underlying shares (physically settled equity derivatives)

No such interest was reported by the Directors.

23

2.   Aggregate short position in shares and (in respect of positions held pursuant to equity derivatives) underlying shares and in debentures of the Company and its associated corporation(s)

No such short position was reported by the Directors.

Save as disclosed above, as at 31 December 2011, none of the Directors or the chief executive of the Company had, under Divisions 7 and 8 of Part XV of the SFO, nor were they taken to or deemed to have under such provisions of the SFO, any interest or short position in the shares, underlying shares or debentures of the Company or any associated corporations (within the meaning of Part XV of the SFO) or any interest which were required to be entered into the register kept by the Company pursuant to section 352 of the SFO or any interest which were required to be notified to the Company and the Stock Exchange pursuant to the required standard of dealings by directors of listed issuers as referred to in Rule 5.46 of the GEM Listing Rules.

## B.   SUBSTANTIAL SHAREHOLDERS

As at 31 December 2011, the interests or short positions in the shares and underlying shares of the Company as recorded in the register required to be kept by the Company under section 336 of the SFO were as follows:

1.   Aggregate long position in shares and (in respect of positions held pursuant to equity derivatives) underlying shares of the Company

a.   Interests in shares of the Company (other than pursuant to equity derivatives such as share options, warrants to subscribe or convertible bonds)

| Name of Shareholder | Capacity | Number of ordinary shares interested | Notes | Percentage of issued share capital[+] |
|---|---|---|---|---|
| ChangAn Investment | Beneficial owner | 2,860,000,000 | (1) | 53.17% |
| IDG-Accel China Growth Fund II L.P. | Interest in controlled corporation | 2,860,000,000 | (1) | 53.17% |
| IDG-Accel China Growth Fund II Associates L.P. | Interest in controlled corporations | 2,860,000,000 | (1) | 53.17% |
| IDG-Accel China Growth GP II Associates Ltd. ("IDG") | Interest in controlled corporations | 2,860,000,000 | (1) | 53.17% |

| Name of Shareholder | Capacity | Number of ordinary shares interested | Notes | Percentage of issued share capital[+] |
|---|---|---|---|---|
| Mr. Patrick J MCGOVERN | Interest in controlled corporations | 2,860,000,000 | (1) | 53.17% |
| Mr. ZHOU Quan | Interest in controlled corporations | 2,860,000,000 | (1) | 53.17% |
| Wise Focus | Interest in controlled corporation | 2,860,000,000 | (2) | 53.17% |
| Innopac | Beneficial owner | 712,084,000 | (3) | 13.24% |
| Lime Development Limited ("Lime Development") | Beneficial owner | 486,340,000 | (4) | 9.04% |
| Town Health International Investments Limited ("Town Health") | Interest in controlled corporations | 497,720,000 | (4) | 9.25% |
| Key Elegance Development Limited ("Key Elegance") | Beneficial owner | 301,720,000 | (5) | 5.61% |
| Mr. LING Wai Hoi | Interest in controlled corporation | 301,720,000 | (5) | 5.61% |
|  | Interest of spouse | 26,722,231 | (5) | 0.50% |
| Ms. WU Mei Chu | Interest of spouse | 301,720,000 | (6) | 5.61% |
|  | Beneficial owner | 26,722,231 | (6) | 0.50% |
| Ms. WEI Hong Mei | Beneficial owner | 23,120,000 | – | 0.43% |

*Notes:*

1.  ChangAn Investment was interested in 2,860,000,000 shares of the Company. ChangAn Investment is a company owned as to 40.44% by IDG-Accel China Growth Fund II L.P., an investment fund controlled by IDG-Accel China Growth Fund II Associate L.P.. IDG-Accel China Growth Fund II Associates L.P. is controlled by IDG, which is in turn controlled by Mr. ZHOU Quan and Mr. Patrick J MCGOVERN. Accordingly, IDG-Accel China Growth Fund II L.P., IDG-Accel China Growth Fund II Associates L.P., IDG, Mr. ZHOU Quan and Mr. Patrick J MCGOVERN were deemed to be interested in the shares held by ChangAn Investment under Part XV of the SFO.

2.  ChangAn Investment is a company owned as to 56.25% by Wise Focus. Wise Focus was owned as to 66.67% by Mr. MENG Hu who is also its sole director. Wise Focus and Mr. MENG Hu were deemed to be interested in the shares held by ChangAn Investment under Part XV of the SFO.

3.  The interest of Innopac has also been disclosed as interest of Mr. CHEN Ling Sonny in the above paragraph under "Disclosure of Interests under Part XV of the Securities and Futures Ordinance - Directors and Chief Executives".

4.  Lime Development was interested in 486,340,000 shares of the Company. Lime Development is controlled by Town Health. Accordingly, Town Health was deemed to be interested in the shares held by Lime Development under Part XV of the SFO.

    Apart from the above, Town Health was interested in 11,380,000 shares of the Company which were held by its controlled corporations.

5.  These 301,720,000 shares of the Company were held by Key Elegance, a corporation wholly owned by Mr. LING Wai Hoi. Accordingly, Mr. Ling was deemed to be interested in 301,720,000 shares of the Company held by Key Elegance pursuant to Part XV of the SFO.

    Apart from the above, Mr. LING Wai Hoi was deemed to be interested in 26,722,231 shares of the Company through interest of his spouse, Ms. WU Mei Chu.

6.  Ms. WU Mei Chu was deemed to be interested in 301,720,000 shares of the Company through interest of her spouse, Mr. LING Wai Hoi.

    Apart from the above, Ms. WU Mei Chu personally owned 26,722,231 shares of the Company.

+   The percentage represents the number of ordinary shares interested divided by the number of issued shares of the Company as at 31 December 2011.

b.   Interests in underlying shares (physically settled equity derivatives)

No such interest was reported to the Company.

2.   Aggregate short position in shares and (in respect of positions held pursuant to equity derivatives) underlying shares of the Company

No such interest was reported to the Company.

Save as disclosed above, as at 31 December 2011, no person, other than the Directors whose interests are set out in the above paragraph under "Disclosure of Interests under Part XV of the Securities and Futures Ordinance – Directors and Chief Executives", had registered an interest or a short position in the shares or underlying shares of the Company that was required to be recorded under Section 336 of the SFO.

## SHARE OPTION SCHEMES

The following share options were outstanding under the Share Option Scheme during the period:

| Name or category of participant | Number of share options | | | Exercisable period of share options[#] | Date of grant of share options | Exercise price of share options HK$ |
| | As at 1 July 2011 | Granted/ lapsed/ cancelled/ exercised during the period | As at 31 December 2011 | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **Director** | | | | | | |
| Mr. CHOW Siu Kwong | 2,880,000 | (2,880,000) | – | 9 July 2007 to 8 July 2017 | 16 July 2007 | 0.43 |
| Employees | 1,040,000 | – | 1,040,000 | 9 July 2007 to 8 July 2012 | 16 July 2007 | 0.43 |
| | 3,920,000 | (2,880,000) | 1,040,000 | | | |

[#]   *The vesting period of the share options is from the date of grant until the commencement of the exercise period.*

## DIRECTORS' RIGHTS TO ACQUIRE SHARES

Apart from those as disclosed in the above paragraph under "Disclosure of interest under Part XV of the Securities and Futures Ordinance – A. Directors and Chief Executives", at no time during the period were rights to acquire benefits by means of the acquisition of shares in or debentures of the Company granted to any directors or their respective spouse or children under 18 year of age, or were any rights exercised by them; or was the Company, or any of its subsidiaries a party to any arrangement to enable the directors of the Company to acquire such rights in any other body corporate.

## SUFFICIENCY OF PUBLIC FLOAT

Based on information that is publicly available to the Company and within the knowledge of the directors, at least 25% of the Company's total issued share capital was held by the public as at the date of this announcement.

## DIRECTORS' INTERESTS IN A COMPETING BUSINESS

None of the directors, initial management shareholders or their respective associates of the Company has an interest in a business which competes or may compete with the business of the Group.

## PURCHASE, SALE OR REDEMPTION OF THE COMPANY'S LISTED SECURITIES

During the six months ended 31 December 2011, the Company repurchased 67,500,000 shares of the Company on the Stock Exchange at an aggregate consideration of HK$70,211,960 (excluding expenses) for the enhancement of its net asset value and earnings per share. All repurchased shares had been cancelled during the six months ended 31 December 2011. Details of the repurchases of shares are summarized as follows:

| Month of the repurchases | Total number of ordinary shares repurchased | Highest price paid per share HK$ | Lowest price paid per share HK$ | Aggregate consideration paid HK$ |
|---|---|---|---|---|
| September 2011 | 15,000,000 | 1.04 | 0.89 | 15,143,400 |
| October 2011 | 20,000,000 | 0.96 | 0.87 | 18,636,760 |
| November 2011 | 32,500,000 | 1.16 | 1.07 | 36,431,800 |
| | 67,500,000 | | | 70,211,960 |

Save as disclosed above, neither the Company nor any of its subsidiaries had purchased, sold or redeemed any of the listed securities of the Company during the six months ended 31 December 2011.

## SECURITIES TRANSACTIONS BY DIRECTORS

The Group has adopted stringent procedures governing director's securities transaction in compliance with Rules 5.48 to 5.67 of the GEM Listing Rules. Relevant employees who are likely to be in possession of unpublished price-sensitive information of the Group are also subject to compliance with guidelines with no less exacting terms than those set out in the Rules. No incidence of non-compliance was noted for the six months ended 31 December 2011.

## CODE ON CORPORATE GOVERNANCE PRACTICES

The Company has compiled with the code provisions of the Code of Corporate Governance Practices (the "CG Code") set out in Appendix 15 of the GEM Listing Rules throughout the six months ended 31 December 2011, except for the following deviation:

### Code Provision E.1.2

The general meetings of the Company provide an opportunity for communication between the shareholders and the Board. The Chairman of the Board as well as chairman of the Remuneration Committee and Audit Committee, or in their absence, other members of the respective committees, and where applicable, the independent Board committee, are available to answer questions at the shareholder's meetings. However, the Chairman of the Board was unable to attend the Company's 2011 annual general meeting (as stipulated under the Code Provision E.1.2 of the CG Code) as he had an important business engagement. Despite his absence, he had arranged for the Chief Executive Officer taking the chair of the meeting and answering shareholders' questions. No questions were raised by the shareholders at the meeting.

### AUDIT COMMITTEE

The Company set up an audit committee (the "Committee") with written terms of reference in compliance with the requirements of the GEM Listing Rules. The primary duties of the Committee are to review and provide supervision over the financial reporting process and internal control of the Group. The Committee comprises four independent non-executive directors, Mr. LU Wei, Mr. FONG Fuk Wai, Mr. LI Guanbao and Mr. MAK Yat Tang Anthony. The information contained in the Group's interim report for the six months ended 31 December 2011 has not been audited but has been reviewed by the Committee, who was of opinion that such report compiled with the applicable accounting standards, and the GEM Listing Rules and legal requirements and that adequate disclosures had been made.

**BOARD PRACTICES AND PROCEDURES**

During the six months ended 31 December 2011, the Company has compiled with the board practices and procedures as set out in Rules 5.34 to 5.45 of the GEM Listing Rules.

By order of the Board
**HUANG Shaokang**
*Chairman*

Hong Kong, 13 February 2011

*As at the date of this announcement, the executive directors are Mr. HUANG Shaokang, Mr. CHOW Siu Kwong and Mr. MENG Hu, the non-executive director is Mr. CHEN Ling Sonny, Mr. GAO Xiang and Mr. ZHANG Zhen, and the independent non-executive directors are Mr. LU Wei, Mr. FONG Fuk Wai, Mr. LI Guanbao and Mr. MAK Yat Tang Anthony.*

*This announcement will remain on the "Latest Company Announcements" page of the GEM website at www.hkgem.com for at least 7 days from the date of its publication and on the website of the Company at www.epro.com.hk.*

# EXHIBIT G - INVOICE FOR COMPUTER PRODUCTS

# ePRO

**EPRO Systems (China) Limited**
Rm 1501, 15/F, Tung Hip Commercial Building, 244-248 Des Voeux Road
Central,  Hong Kong.
Tel: (852) 2376-3373    Fax: (852) 2375-2193

## INVOICE

EPRO COMPUTER SYSTEMS (BEIJING) CO LTD

RM 2002, HAO CHENG BUILDING,

NO. 6 ZUO JIA ZHUANG IN STREET,

CHAO YANG DISTRICT

BEIJING 100028

P. R. CHINA

ATTN: MS. LINDA LIN

DATE : 25-Oct-11

INVOICE NO. : P2932

REF. NO. : BPI-1688/1689-HE

OUR P.O.: EPO-9491

PAGE : 1  OF  1

| ITEM | MODEL/DESCRIPTION | QTY | USD NET AMOUNT |
|------|-------------------|-----|----------------|
| 1 | HP Computer Products | 1 | 44,595.14 |
| 2 | TT Bank charges | | 32.00 |
| | | TOTAL (USD) : | 44,627.14 |

AMOUNT IN WORDS:

SAY U S DOLLARS FORTY FOUR THOUSAND SIX HUNDRED TWENTY SEVEN AND CENTS
FORTEEN ONLY.

最终用户：天津宜家家居有限公司

For and on behalf of
**EPRO SYSTEMS (CHINA) LIMITED**

Authorized Signature

# EXHIBIT H - LOGISTICS AGREEMENT

THIS AGREEMENT is made the          day of          2011

BETWEEN:

(1)    **EPRO E-commerce Limited**, a company incorporated under the laws of Hong Kong with limited liability and whose registered office is situate at Room 301, 3rd Floor, Town Health Technology Centre, 10-12 Yuen Shun Circuit, Siu Lek Yuen, Shatin, New Territories, Hong Kong ("**EPRO**"); and

(2)    **MadeinChina Limited**, a company incorporated under the laws of Hong Kong with limited liability and whose registered office is situate at 51,5th FL, Britannia House, Jin. Cator, BS8811, Bandar Seri Begawan, Brunei Darussalam. ("**Carrier**").

WHEREAS:

A.    EPRO is carrying out e-commerce business and provides various kinds of online services including but not limited to e-commerce that allows or facilitates users and merchants to purchase various products from EPRO through the internet at or under the   domain name "www.dealextreme.com" which is owned by its holding company.

B.    EPRO requires and the Carrier is willing to provide packaging and transportation services to EPRO as EPRO may from time to time require in order to deliver the Products (as hereinafter defined) to the Customers (as hereinafter defined).

C.    EPRO wishes to appoint the Carrier and the Carrier desires to accept such appointment, solely as an independent contractor, as its non-exclusive carrier to provide services to package, transport and deliver the Products  to the Customers as EPRO may from time to time require upon the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and obligations hereinafter set forth and for other valuable considerations the sufficiency of which are hereby acknowledged, the parties hereto agree as follows:-

1      **Interpretation**

1.1    In this Agreement unless it is specifically provided to the contrary, the following terms and phrases shall have the following meanings ascribed thereto:-

"Customers"              means the customers of EPRO

"Delivery Address"       means the delivery address(es) stated on the Order (as hereinafter defined)

"Effective Date"         means 01/07/2011

"Hong Kong"              means the Hong Kong Special Administrative Region of the People's Republic of China

"Location"               means any Hong Kong post office or other point(s) of collection as specified by EPRO in the Order

"Products"               means the products described in an Order

1.2    In this Agreement,

    1.2.1        the singular includes the plural and vice versa;

    1.2.2        words importing gender or the neuter include both genders and the neuter and references to persons include any public body and any body of persons, corporate or unincorporate;

    1.2.3        a reference to any statute, enactment, order, regulation or other similar instrument shall include amendments by any subsequent statute, enactment, order, regulation or instrument or as contained in any subsequent re-enactment thereof;

    1.2.3        references to Clauses are references to clauses of this Agreement; and

    1.2.4        a reference to a party is a reference to either EPRO or the Carrier and a reference to the parties means both of them.

1.3    Headings are included for convenience and do not affect the interpretation of this Agreement.

## 2    Appointment

EPRO hereby appoints the Carrier and the Carrier hereby accepts such appointment, solely as an independent contractor, as its non-exclusive carrier to provide services to package, transport and deliver the Products to the Customers as EPRO may from time to time require upon the terms and conditions of this Agreement.

## 3.    Term

This Agreement shall become effective on the Effective Date and shall continue to be in full force and effect until it is terminated pursuant to Clause 9 of this Agreement.

## 4.    Provision of Packaging Transportation and Delivery Services

4.1    The Carrier may from time to time provide and update its quotations for the provision of the Services (as hereinafter defined) to EPRO.

4.2    EPRO is entitled to and may from time to time give orders ("**Orders**") to the Carrier to require the Carrier to provide services ("**Services**") for collecting, packaging, transporting and delivering the Products to the Customers.

4.3    Each Order given by EPRO to the Carrier shall be deemed to be accepted by the Carrier unless the Carrier within 24 hours of its receipt of an Order notify EPRO that the Order is rejected, then that particular Order is rejected by the Carrier.

4.4    Upon acceptance of the Order by the Carrier, the Carrier shall collect the Products from the Location and transport and deliver the Products to the Customers at the Delivery Address in an undamaged condition on the date or within the period in accordance with the Order.   The Carrier shall package the Products in accordance with the Order before delivering the Products to the Customers.

4.5     The Carrier is entitled to subcontract the Services (or any part thereof) under the Order to any third party provided the third party is competent to perform the Services of the relevant Order but the Carrier shall remain responsible for the performance of the Services by the relevant third party.

4.6     The Carrier is liable for any and all loss of or damage to the Products under any Order accepted by the Carrier.  If the Carrier fails to deliver any Product to any Customer under any Order in accordance with EPRO's instructions thereon, the Carrier shall compensate and pay EPRO five (5) times the amount of the fees charged by the Carrier for the relevant Order..

## 5.     Support Services

5.1     The Carrier shall provide support services incidental to the packaging, transportation and delivery of the Products including but not limited to tracing, expediting and delivery confirmation.

## 6.     Insurance

6.1     The Carrier shall ensure and/or procure that its and/or its subcontractors' (if applicable) vehicles are fully insured to the value of the vehicles and the Products against normal risks (including fire, theft and third party liability) at its and/or its subcontractors' (if applicable) respective own expense and no liability shall attach to EPRO in this respect.

6.2     The Carrier shall also maintain any insurance coverage as required by any government body including employees' compensation (if applicable) for the Services provided under this Agreement.

## 7      Terms of payment

7.1     The Carrier shall be entitled to send invoice to EPRO together with copy of the relevant Order(s) at any time after delivery of the Products pursuant to the relevant Order(s) for the fees in respect of the Services provided by Carrier to EPRO under the relevant Order(s) during the previous week.

7.2     EPRO shall pay the fees shown on a proper invoice within seven (7) days from the date on which the invoice is received by EPRO.

7.3     EPRO shall be entitled to set off against the fees shown on the invoice   any sums owed to EPRO by the Carrier.

## 8      Indemnification

The Carrier shall at all times indemnify, defend and hold harmless EPRO, its agents, Customers and employees harmless from any and all claims including legal costs and expenses arising from the Services provided by the Carrier hereunder (including, without limitation, claims for personal injury, death and damage to property) asserted against EPRO, its agents, Customers and employees by any agents, subcontractors and/or employees of the Carrier or by any other persons.   The provisions of this Clause shall survive cancellation or termination of this Agreement.

**9        Termination**

9.1      This Agreement may be terminated by either party by giving not less than one (1) month's written notice to the other.

9.2      Without prejudice to its other rights, EPRO shall be entitled to terminate this Agreement immediately without liability to the Carrier by giving notice to the Carrier at any time if:

   9.2.1      the Carrier fails duly and punctually to perform or comply with any of its obligations under this Agreement and, in respect only of a failure which is capable of remedy, does not remedy such failure to EPRO's satisfaction within [three (3) days] after receipt of written notice from EPRO requiring it to do so;

   9.2.2      the Carrier makes any voluntary arrangement with its creditors or becomes subject to an administration order or goes into liquidation (otherwise than for the purpose of amalgamation or reconstruction); or

   9.2.3      an encumbrancer takes possession, or a receiver is appointed, of any of the property or assets of the Carrier; or

   9.2.4      the Carrier ceases, or threatens to cease, to carry on business; or

   9.2.5      EPRO reasonably apprehends that any of the events mentioned above is about to occur in relation to the Carrier and notifies the Carrier accordingly.

9.3      Notwithstanding the termination of this Agreement, the parties shall perform all of their respective obligations and agreements hereunder with respect to any Order already accepted by the Carrier prior to the termination of this Agreement until the relevant Products have been delivered.

9.4      Termination of this Agreement shall not affect the rights of either party which have accrued prior to termination.

**10.     Notice**

Any notice or other communication given or made under this Agreement shall be in writing and delivered by hand or sent by prepaid letter or by facsimile transmission at the address or fax number of the relevant party set out below (or such other address or fax number as the addressee has by five (5) days' prior written notice specified to the other party):

EPRO:              EPRO E-commerce Limited

Address:           Room 301, 3rd Floor, Town Health Technology Centre, 10-12 Yuen Shun Circuit, Siu Lek Yuen, Shatin, New Territories, Hong Kong

Attn:              Ms. Liu Yen Ting

| | |
|---|---|
| Carrier: | MadeinChina Limited |
| Address: | 51,5th FL, Britannia House, Jin. Cator, BS8811, Bandar Seri Begawan, Brunei Darussalam. |
| Attn: | Ms. Gu Xuan |

Any such notice, demand or communication shall be deemed to have been duly served: (a) if given or made by hand, when actually delivered to the relevant address; (b) if sent by post from one party to the other within Hong Kong, two (2) days after posting; (c) if given or made by letter post sent to or from outside Hong Kong, seven (7) days after posting; and (d) if given or made by facsimile transmission, when dispatched.

In proving service, it shall be sufficient (in the case of service by hand and prepaid letter) to prove that the notice, demand or communication was properly addressed and delivered or posted, as the case may be, and in the case of service by facsimile transmission to prove that the transmission was confirmed as sent by the originating machine.

## 11.    General

11.1    No waiver by EPRO of any breach of this Agreement by the Carrier shall be considered as a waiver of any subsequent breach of the same or any other provision.

11.2    If any provision of this Agreement is held by any competent authority to be invalid or unenforceable in whole or in part the validity of the other provisions of this Agreement and the remainder of the provision in question shall not be affected thereby.

11.3    Nothing in this Agreement shall create, or be deemed to create, a partnership or the relationship of employer and employee between the parties.

## 12.    Entire Agreement

This Agreement sets forth the final and entire agreement between the parties with respect to the subject matter of this Agreement and merges, supersedes and excludes any and all oral and written prior statements, discussions, representations, promises, agreements and understandings of every kind and nature between the parties with respect to the subject matter of this Agreement.

## 13.    Governing Law and Jurisdiction

This Agreement shall be governed by and construed in accordance with the laws of Hong Kong. The parties hereto irrevocably submit to the non-exclusive jurisdiction of the Hong Kong courts and each party waives any objection to proceedings in Hong Kong on the grounds of venue or inconvenient forum.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first written above.

SIGNED by Ms. Liu Yen Ting )
for and on behalf of )
EPRO E-commerce Limited )
in the presence of : )

*For and on behalf of*
**EPRO E-commerce Limited**
易覽電子商務有限公司

..................................................
*Authorized Signature(s)*

SIGNED by Ms.Gu Xuan )
for and on behalf of )
MadeinChina Limited )
in the presence of : )

*For and on behalf of*
MadeinChina Limited
達達國際有限公司

..................................................