IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KLIPSCH GROUP, INC.,

        Plaintiff,

  v.

BIG BOX STORE, LIMITED dba
BIXBOXSTORE.COM *et al*.

        Defendants.

Case No. 12-CV-6283 (AJN)

**DEFENDANT DEALEXTREME.COM'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, ORDER TO DISABLE CERTAIN WEBSITES, ASSET RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

BAKER & McKENZIE LLP
Douglas M. Tween
John A. Basinger
1114 Avenue of the Americas
New York, New York 10036
(212) 626-4100
Attorneys for Defendant
Dealextreme.com

Defendant Dealextreme.com ("Dealextreme") submits this Supplemental Memorandum and the accompanying Supplemental Declaration of Daniel Chow ("Supplemental Chow Declaration") as permitted by the Court in its September 14, 2012 Order. As set forth in prior papers, Dealextreme is a website marketplace operated by ePRO e-Commerce Limited, a wholly-owned subsidiary of publically-traded ePRO Systems Limited (collectively "ePRO").

The Supplemental Chow Declaration and its exhibits establish, through competent testimony and documentary evidence, that ePRO's total revenues from sales of Klipsch-branded goods to the United States were $691.70, that its total revenues from global sales of Klipsch-branded goods were $6,346.40, and that its total gross profits from those sales globally were under $1,200.

Nevertheless, Plaintiff seeks to retain an asset freeze on $2 million of ePRO's assets. There is no authority that supports a freeze of assets so far out of proportion to actual damages, and ePRO respectfully requests that this Court dissolve the freeze of assets in its entirety, or in the alternative reduce the amount of assets frozen to $1,200, the amount of Dealextreme's gross profits from global sales of the allegedly-infringing goods.

Similarly, Plaintiff seeks to continue an order of expedited discovery that was obtained *ex parte* based upon Plaintiff's assertions that such information was necessary to learn defendants' true identities. But Dealextreme has now appeared. In the Supplemental Chow Declaration and in documents being provided to Plaintiff, Dealextreme identifies its suppliers of the goods in question and all U.S. customers. As set forth in the first Chow Declaration, ePRO stopped listing any Klipsch-branded items months ago. There is no basis for expedited discovery, which places an undue burden on a foreign entity such as ePRO, particularly given the 12-hour time difference and the fact that all of ePRO's management and employees are at best non-native English

speakers in need of some translation assistance.

I. <u>The Amount of the Asset Freeze Must Be Reduced</u>

    A.     **An Asset Freeze Can Be Justified Only to Secure Plaintiff in a Likely Recovery**

Because the Lanham Act authorizes an accounting of defendant's profits from the sale of infringing goods as an equitable remedy, a district court may enter a prejudgment order freezing assets in a Lanham Act case for the purpose of ensuring the availability of exactly that equitable relief -- an award of a defendant's profits. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559-60 (9th Cir. 1992). *See also Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (1995); *The North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226 *11 (S.D.N.Y. March 30, 2006)(courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits" for the purpose of preserving security for plaintiff's future recovery on an accounting). There is no justification for a pre-judgment freeze of assets beyond those reasonably necessary to secure Plaintiff's likely equitable recovery of profits.

Dealextreme has presented both documentary evidence and competent testimony that its profits from sales of all Klipsch-branded merchandise to customers in the U.S. were less than $125, and profits from sales globally were less than $1,000. Supplemental Chow Declaration ¶¶ 8, 10, 12-13 and Ex. A, D-E. Thus, even under the standard posited by Plaintiff at the September 14 hearing, Dealextreme has met its burden to show that no more than $1,000 of its assets are the proceeds of sales of allegedly counterfeit goods and no restraint is justified above that amount.

Further, as the Court indicated at the September 14, 2012 hearing, Dealextreme is likely to have sufficient funds available for post-judgment attachment to satisfy any such award; thus,

its assets should not be frozen. *Cf. The North Face*, *supra*, 2006 U.S. Dist. LEXIS 14226 *20 (Plaintiffs consented to release the assets of Waitex, which argued that the freeze was improper because it was financially secure and would not "cut and run.").

### B. Plaintiff's Recovery Is Limited to a Reasonable Multiple of Actual Damages

Even if Plaintiff were ultimately to prevail and establish willful infringement by Dealextreme -- of which we stress there is no evidence -- statutory damages must bear some relation to actual damages. *See Coach, Inc. v. O'Brien,* No. 10 Civ. 6071 (JPO)(JLC), 2012 U.S. Dist. LEXIS 52565 *6 (S.D.N.Y. April 13, 2012).[1] In other words, they must be "woven out of the same bolt of cloth as actual damages." *Id.* at *8, *quoting* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[E][1] (2011). Here, Plaintiff seeks to retain a freeze on $2 million in assets, amounting to ***more than 16,000 times*** the profits on Dealextreme's U.S. sales of allegedly-infringing products as established by documentary evidence and competent testimony, more than 2,300 times global profits, and ***more than 348 times global gross revenues***.[2] *See* Supplemental Chow Declaration ¶¶ 6-13. As set forth in greater detail below, case law does not support such a great disparity.

In the September 14 Order, the court notes that the current case will proceed pursuant to

---

[1] While *Coach* ultimately assessed damages of $249,000, or about 45 times the defendant's contention of revenues, the defendant's statement of the amount of its revenues was unsworn, not supported by evidence, and the damages figure was reached after a default judgment and finding of willful infringement in a case in which the defendant had not cooperated in discovery. *Id.* No such factors are present here, as Dealextreme has appeared, has produced documentation concerning its sales and has not been adjudged guilty of infringement, much less willful infringement. Nevertheless, even 45 times Dealextreme's U.S. gross revenues would amount only to about $31,000.

[2] Even were Dealextreme liable for infringement for shipments to the U.S., the Lanham does not reach the wholly-foreign sales of merchandise listed on its site and shipped from Hong Kong or China to locations outside the U.S. *See Gucci America, Inc. v. Guess? Inc.*, 790 F.Supp.2d 136, 144-46 (S.D.N.Y. 2011).

the approach of *The North Face Apparel Corp., supra,* 2006 U.S. Dist. LEXIS 14226. *See* Docket No. 48.

In *The North Face*, the defendant asserted that its profits from the counterfeit goods totaled approximately $235,000. *Id.* at *8. However, the plaintiff in that case provided different calculations, supported by packing lists and sales slips, showing profits of over $1.3 million. *Id.* at *13. Nevertheless, the court indicated that further evidence was necessary on the issue of the amount of assets to remain frozen and directed the parties to meet and confer in an effort to reach an agreement. *Id.* at *13-14. In the interim, the court retained a freeze on approximately $1 million in assets -- less than the amount of claimed profits supported by the plaintiff's documentary evidence. *Id.* at *8 n.4.

Indeed, as set forth in both *Levi Strauss*, it is not clear that a district court has the authority to freeze assets other than those available to satisfy an award of profits, rather than statutory or other damages. *See Levi Strauss, supra*, ("it's not clear that the district court's authority extended to freezing those assets which might not have been available to satisfy an award ***of profits***." (emphasis added)). *See also Reebok, supra,* 970 F.2d at 560 n.11 ("a freeze of those assets that 'in no circumstances can be dealt with in any final [relief] that may be entered' may not be within the equitable power of the district court.").

## II. The Order of Expedited Discovery Should Be Dissolved as to Dealextreme

Courts in this Circuit employ two tests for determining the propriety of a request for expedited discovery. The first is a "reasonableness standard." *See*, *e.g.*, *KeyBank, Nat'l Assoc. v. Quality Pay-Roll Sys., Inc.*, No. 06-CV-3013, 2006 U.S. Dist. LEXIS 42078, at *4 (E.D.N.Y. June 22, 2006) (citation omitted). This standard requires the party seeking expedited discovery to prove the requests are reasonable under the circumstances. *See id*.

The second standard is a four-factor test originally set forth in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982). Under the four-factor *Notaro* test, a plaintiff must demonstrate:

> (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted.

*KWG Partners, LLC v. Sigel*, 2011 U.S. Dist. LEXIS 75900, at *4-5 (E.D.N.Y. July 14, 2011) (citing *Notaro*, 95 F.R.D. at 405).

Plaintiffs argued in their opening brief that they needed expedited discovery to learn "(1) identities of Defendants, (2) identities and locations of Defendants' other Infringing Websites, (3) identities and locations of Defendants' financial accounts and payment providers, (4) pending shipments, and (5) the location of the Counterfeit Products that are sold and shipped by Defendants . . . ." Plaintiff's Mem., Docket No. 18 at 16-17. Dealextreme's appearance, actions and submissions resolve all of these issues. Dealextreme has identified itself and its corporate parents; it has identified related websites; its PayPal accounts have been identified and contain vastly more than adequate funds to compensate Plaintiffs should they prevail; there have been no pending shipments for months; and Dealextreme is providing in connection with these papers the identities of its suppliers and of all U.S. customers. In no way is undefined expedited discovery against Dealextreme, a foreign defendant who has appeared and cooperated with the court, reasonably necessary or in any way connected to the avoidance of irreparable harm.

### III. CONCLUSION

Dealextreme has appeared, established that it is not a significant risk to secrete assets and provided documentary evidence demonstrating that its worldwide gross profits from the alleged sale of counterfeit goods are less than $1,000. The prejudgment asset freeze should be eliminated or reduced sharply. Similarly, Dealextreme has demonstrated that expedited

discovery is unwarranted and should not be authorized against Dealextreme.

Dated: New York, New York
       September 21, 2012

                          BAKER & McKENZIE LLP

                          By:_____/s_____
                              Douglas M. Tween
                              John A. Basinger
                              1114 Avenue of the Americas
                              New York, New York 10036
                              (212) 626-4100
                              Attorneys for Defendant
                              Dealextreme.com