UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KLIPSCH GROUP, INC.,

                Plaintiff,

        v.

BIG BOX STORE LIMITED d/b/a BIGBOXSTORE.COM
and BIGBOXSAVE.COM; ZHONGREN CAO d/b/a
UNITED PACIFIC CONNECTIONS COMPANY d/b/a
ATECHPORT.COM and WIRELESSSPYCAMERA.BIZ;
DANDAN WU d/b/a PANDAWILL.COM; *et al.*,

                Defendants.

No. 12-cv-06283 (AJN)

**PLAINTIFF KLIPSCH GROUP, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A STAY PENDING APPEAL FROM THE OCTOBER 11, 2012
ORDER MODIFYING INJUNCTION**

## TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

    A.    Klipsch Has Demonstrated a Substantial Possibility of Success on the
Merits of its Appeal ................................................................................................ 3

        1.    DealExtreme's Submission in Support of its Motion to Modify the
Preliminary Injunction was Insufficient as a Matter of Law ...................... 3

        2.    The Court Erred As A Matter of Law in Failing To Find An
Equitable Right to Damages Under the Lanham Act .................................. 5

    B.    The Balance of Hardships Favors the Granting of a Stay ...................................... 8

        1.    Klipsch Will Be Irreparably Harmed Absent A Stay ................................. 8

        2.    DealExtreme Will Not Suffer "Substantial Injury" ................................... 10

    C.    The Public Interest Favors a Stay ....................................................................... 11

CONCLUSION .................................................................................................................. 13

DWT 20518658v3 0095938-000002

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Adv. Mining Sys., Inc. v. Lutin,*
   173 B.R. 467 (Bkr. S.D.N.Y. 1994)......................................................................................9

*Brenntag Int'l Chems., Inc. v. Bank of India,*
   175 F.3d 245 (2d Cir. 1999) ........................................................................................10

*Carl Zeiss Stiftung v. Veb Carl Zeiss Jena,*
   433 F.2d 686 (2d Cir. 1970) ..........................................................................................6

*Clarett v. National Football League,*
   306 F. Supp. 2d 411 (S.D.N.Y. 2004) ............................................................................3

*Coach, Inc. v. Allen,*
   No. 11 Civ. 3590, 2012 U.S. Dist. LEXIS 100829 (S.D.N.Y. 2012) ...........................8

*Empresa Cubana Del Tabaco v. Culbro Corp.,*
   2004 WL 925615 (S.D.N.Y. April 30, 2004) ..............................................................11

*Feiya Cosmetics, LLC v. Beyond Beauty Int'l, LLC,*
   No. C-10-00967 JCS, 2011 U.S. Dist. LEXIS 111769 (N.D. Cal. Aug. 29, 2011) ........8

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.,*
   807 F.2d 1110 (2d Cir. 1986) .........................................................................................6

*Greenridge v. Allstate Ins. Co.,*
   2003 WL 22871905 (S.D.N.Y. Dec. 3, 2003) .......................................................10, 11

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.,*
   315 F.Supp.2d 511 (S.D.N.Y.) (quoting S. Rep. No. 104-177, at 10 (1995))), *amended in part,* 328
   F.Supp.2d 439 (2004) .....................................................................................................6

*In re Agent Orange Prod. Liability Lit.,*
   804 F.2d 19 (2d Cir. 1986) .............................................................................................9

*In re St. Johnsbury Trucking Co.,*
   185 B.R. 687 (S.D.N.Y. 1995) .......................................................................................9

*In re World Trade Center Disaster Litig.*
   503 F.3d 167 (2d Cir. 2007) ...........................................................................................3

*Louis Vuitton Malletier v. Veit,*
   211 F. Supp. 2d 567 (E.D .Pa. 2002) ..........................................................................8, 9

*Louis Vuitton Malletier v. WhenU.com, Inc.,*
   No. 05 Civ. 1325 (LAK), 2006 U.S. Dist. LEXIS 97550 (S.D.N.Y. Nov. 15, 2006)...........6

*Masters v. UHS of Del., Inc.,*
   631 F.3d 464 (8th Cir. Mo. 2011).................................................................................5

*Mohammed v. Reno,*
   309 F.3d 95 (2d Cir. 2003) ................................................................................................. 3

*Motorola, Inc. v. Abeckaser,*
   No. 07-cv-3963, 2009 U.S. Dist. LEXIS 40660 (E.D.N.Y. May 14, 2009) ......................... 7

*North Face Apparel Corp. v. TC Fashions, Inc.,*
   2006 WL 838993 (S.D.N.Y. Mar. 30, 2006) ............................................................ 1, 3, 4, 5

*Patsy's Italina Rest., Inc. v. Banas,*
   575 F.Supp.2d 427 (S.D.N.Y. 2008) ................................................................................... 11

*Playboy Enters., Inc. v. Baccarat Clothing Co.,*
   692 F.2d 1272 (9th Cir. 1982) ............................................................................. 6, 9, 11, 12

*Quantum Corp. Funding, Ltd. V. Assist You Home Health Care Services of VA.,*
   144 F. Supp. 2d 241 (S.D.N.Y. 2001) ................................................................................... 8

*Reebok v. Marnatech,*
   970 F.2d 552 (9th Cir. 1992) ....................................................................................... 6, 7, 11

*Rolex Watch, U.S.A., Inc. v. Pharel,*
   No. 09 CV 4810 (RRM), 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. 2011) .......................... 8

*Seatrax, Inc. v Sonbeck Int'l, Inc.,*
   200 F.3d 358 (5th Cir. 2000) ................................................................................................ 5

*Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 369 (5th Cir. 2000 ........................................ 6

*Thapa v. Gonzales,*
   460 F.3d 323 (2d Cir.2006) ................................................................................................. 10

*The Republic of the Phillipines v. Marcos,*
   862 F.2d 1355 (9th Cir. 1988) .............................................................................................. 8

*Tiffany (NJ) Inc. v. Luban,*
   282 F.Supp.2d 123 (S.D.N.Y.2003) ...................................................................................... 6

*U.S. Bank Nat'l Assoc. v. Nesbitt Bellevue Property LLC,*
   2012 U.S. Dist. Lexis 78291 (2d Cir. June 5, 2012) ............................................................ 2

**FEDERAL STATUTES**

15 U.S.C. § 1116(d)(1)(A) ........................................................................................................... 5

15 U.S.C. § 1117 ........................................................................................................................... 8

15 U.S.C. § 1117(a) ...................................................................................................................... 9

15 U.S.C. § 1117(a), (c) ............................................................................................................... 6

28 U.S.C. § 1292(a)(1)(A) ........................................................................................................... 2

DWT 20518658v3 0095938-000002

## RULES

Federal Rule of Civil Procedure 62(c) ................................................................................................1, 13

## REGULATIONS

Order at2 .................................................................................................................................................7

## OTHER AUTHORITIES

Finally, *Grupo Mexico* ..........................................................................................................................7

Mark Litke, ABC News.com (April 21, 2012). *Available at* http://abcnews.go.com/WNT/story?id=130381 .........12

November 2005, at p. 34, available at http://books.google.com/books?id=6F8EAAAAMBAJ.............................9

DWT 20518658v3 0095938-000002

Plaintiff Klipsch Group, Inc. ("Klipsch" or "Plaintiff") respectfully submits this memorandum of law in support of its motion for (i) an immediate interim stay of the Court's October 11, 2012 Memorandum and Order (the "Memorandum and Order") (Doc. No. 67), pending final resolution of this motion; and (ii) a stay of enforcement of the Memorandum and Order pending appeal, pursuant to Federal Rule of Civil Procedure 62(c), to the extent that it reduced the amount of assets presently frozen to $20,000 or, in the alternative, for a temporary stay in order to permit it to seek a stay pending appeal from the Second Circuit.

## BACKGROUND

On September 14, 2012, after a hearing on the merits and briefing on Plaintiff's motion for injunctive relief, this Court converted a previously-entered Temporary Restraining Order and Asset Restraining Order to an Injunction preliminarily enjoining Defendant DealExtreme.com ("DealExtreme" or "Defendant") from, *inter alia*, any further distribution or sale of goods bearing counterfeit copies of Klipsch's trademarks and continuing the restraint of $2 million in assets ("Restrained Assets") located in several PayPal accounts, which Defendant had used in its sale of counterfeit KLIPSCH®-branded goods (the "Preliminary Injunction").

In its ruling, the Court found that Klipsch had demonstrated a likelihood of success on the merits, stating that DealExtreme "was the direct seller for what are admittedly counterfeit goods"[1] and continued the restraint on the Restrained Assets because Defendant failed to submit sufficient evidence that the Restrained Assets were not the proceeds of its counterfeiting activities. The Court further indicated that it intended to follow the approach taken by Judge Berman in *North Face Apparel Corp. v. TC Fashions, Inc.*[2] and instructed Defendant "to submit additional documentary evidence to meet its burden of establishing that the [Restrained Assets] *are not the proceeds of counterfeiting activities.*"[3]

In response, Defendant failed to submit any evidence pertaining to the Restrained Assets. Rather, Defendant submitted the supplemental declaration of Daniel Chow dated September 21, 2012 ("Suppl. Chow Dec.") providing unsupported testimony concerning Defendant's accounting of profits from its sale of counterfeit goods and documents which were essentially lists created by Mr. Chow from purported documents in Defendant's possession, including:

---

[1] Transcript of September 14, 2012 hearing ("Tr."), attached as Exhibit A to the Declaration of George Wukoson, dated September 26, 2012 ("Supp. Wukoson Decl."), at 46:20-21
[2] No. 05 Civ. 9083, 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006).
[3] Order of Alison J. Nathan, D.J., dated Sept. 14, 2012 (Doc. No. 48) (emphasis added); *see also* Tr. at 50:17-21.

1

1. sales of twenty-two (22) KLIPSCH® products to consumers in the United States and approximately two hundred (200) KLIPSCH® products to consumers outside the United States;[4] and

2. payments by DealExtreme to its suppliers for the KLIPSCH® products.[5]

In the Memorandum and Order entered October 11, 2012,[6] the Court modified the preliminary injunction, reducing the amount of Restrained assets to $20,000, finding that (1) the additional documentary evidence submitted by Defendant demonstrated that the Restrained Assets are unrelated to the sale of counterfeit KLIPSCH branded goods; and (2) assets may only be restrained for the purpose of "an accounting of profits" under the Lanham Act, not to account for damages.[7]

Plaintiff respectfully submits that the Court erred as a matter of law and otherwise abused its discretion in making both findings. Accordingly, Klipsch has timely filed a Notice of Appeal of the Memorandum and Order entered on October 11, 2012, pursuant to 28 U.S.C. § 1292(a)(1)(A) to the extent that it modified the Preliminary Injunction to reduce the amount of the Restrained Assets from $2,000,000 to $20,000.

Klipsch now moves for a stay of enforcement of the Memorandum and Order pending resolution of its appeal. In the alternative, Klipsch seeks a temporary stay to permit it to apply to the Second Circuit for a stay pending appeal. The Second Circuit has stated that "even where [the factors relevant to a stay motion before the district court] are not met, Courts in this Circuit have granted temporary stays in order to allow a party to seek a stay from our Court of Appeals and our Court of Appeals has noted this practice favorably."[8]

For the reasons set forth below, a stay is warranted on the facts of this case and Klipsch's motion should be granted.

## ARGUMENT

In determining whether to grant a stay pending appeal, a court will consider "(1) whether the *movant* will suffer *irreparable injury* absent a stay, (2) whether a party [opposing the stay] will suffer *substantial injury* if a stay is issued, (3) whether the *movant* has demonstrated a *substantial possibility,* although less than a likelihood, of

---

[4] This Court has authority to adjudicate DealExtreme's foreign sales of counterfeit goods. *See* Part II, *infra.*
[5] DealExtreme also submitted English versions of ePRO's 2011/2012 Interim Report and its logistics agreement with MadeinChina Limited, as well as purported agreements with its suppliers of the counterfeit goods. These documents, however, were not submitted as part of DealExtreme's proof on the issue of whether the Restrained Assets are proceeds from their sale of counterfeit KLIPSCH® goods.
[6] (Doc. No. 67.)
[7] Memorandum and Order at 5.
[8] *U.S. Bank Nat'l Assoc. v. Nesbitt Bellevue Property LLC*, No. 12 Civ. 423, 2012 U.S. Dist. Lexis 78291, at *3-*4 (2d Cir. June 5, 2012) (citations omitted).

2

success on appeal, and (4) the public interests that may be affected."[9]  In considering these factors, "the degree to which a factor must be present varies with the strength of the other factors, meaning that 'more of one [factor] excuses less of the other.'"[10]  "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay."[11]

For the reasons set forth more fully below, a stay pending appeal is warranted.  First, Klipsch has demonstrated a "substantial possibility" that it will succeed on appeal that this Court has erred as a matter of law in finding:  (1) that the additional evidence submitted by Defendant demonstrated that the Restrained Assets are unrelated to the sale of counterfeit KLIPSCH branded goods; and (2) that assets may only be restrained for the purpose of "an accounting of profits" under the Lanham Act and not to preserve a plaintiff's right under the Lanham Act for an accounting of damages.   Second, the balance of hardships favors the granting of a stay because Klipsch will suffer substantial, irreparable, and unnecessary harm if the stay of enforcement of the Memorandum and Order is not granted, whereas DealExtreme does not face the threat of "substantial injury."

### A.    Klipsch Has Demonstrated a Substantial Possibility of Success on the Merits of its Appeal

This Court found that Plaintiff had demonstrated a likelihood of success on the merits, stating that DealExtreme "was the direct seller for what are admittedly counterfeit goods."[12]  As such, Plaintiff is entitled to the equitable remedies available under Section 35 of the Lanham Act, including, but not limited to, an equitable accounting for profits and damages.  The modification of the Preliminary Injunction prejudices Plaintiff's rights and is erroneous as a matter of law and otherwise an abuse of discretion.

#### 1.    DealExtreme's Submission in Support of its Motion to Modify the Preliminary Injunction was Insufficient as a Matter of Law

The Court explicitly stated – as it should – that it would adopt the approach taken by Judge Berman in *North Face v. TC Fashions*.  District courts have the inherent authority to freeze assets to ensure the availability of final relief under the Lanham Act.[13]  In *Cartier Int'l B.V. v. Liu*, the terms of the injunction put in place by the court allowed the defendants "to move for a relaxation of the freeze of assets, upon a showing of assets not obtained from

---

[9] *Clarett v. National Football League*, 306 F. Supp. 2d 411 (S.D.N.Y. 2004) (emphasis in original); *see also In re World Trade Center Disaster Litig.* 503 F.3d 167, 170 (2d Cir. 2007).
[10] *In re World Trade Center*, 503 F.3d at 170 (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).
[11] *Mohammed v. Reno*, 309 F.3d 95, 101 n.6 (2d Cir. 2003).
[12] Transcript of September 14, 2012 hearing ("Tr."), attached as Exhibit A to the Declaration of George Wukoson, dated September 26, 2012 ("Supp. Wukoson Decl."), at 46:20-21
[13] *Reebok v. Marnatech*, 970 F.2d at 559.

3

illegal activity."[14]  *North Face v. TC Fashions* ratified this approach and set out a clear rule: "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities."[15]  In this district, that rule since been followed.[16]

In *North Face v. TC Fashions*, as here, the plaintiff had sought an asset restraint in the context of a preliminary injunction and, as here, the defendant contended that certain of its assets had been improperly restrained by the district court because they were not the proceeds of the defendant's illegal counterfeiting activities (specifically, that they were the proceeds of stock sales).[17]  In *North Face v. TC Fashions*, as here, the defendant also submitted evidence in the form of spreadsheets concerning their profits on the sale of the counterfeit goods.  In finding that the defendants failed to proffer evidence sufficient to justify relief from the restraint, the Court noted that it was not sufficient for defendants to show which assets *were* attributable to its illegal activities.  Rather, defendants were required to offer documentary proof sufficient to show the source of the funds that it contended *were not* the proceeds of its counterfeiting operations:

> TC Defendants have not established, for example, that certain frozen assets are derived from proceeds from the sale of securities and not the sale of counterfeit garments. Although TC Defendants have submitted evidence showing that Great Value received money from the sale of securities, they have not submitted any documentary evidence showing that these proceeds were transferred to a bank account that is currently frozen pursuant to the TRO.[18]

This Court did not follow the rule of law as set forth in *TC Fashions*.  Plaintiff has established – and DealExtreme has not denied – that DealExtreme's PayPal account was used by DealExtreme to accept payment for the sale of counterfeit goods.[19]  Thus, the Restrained Assets are related to the profits received by DealExtreme in its sale of counterfeit KLIPSCH® goods and clearly are appropriate in any final relief the Court has the authority to enter.  Defendant did not address the monies in the Restrained Account.  Rather, Defendant's evidentiary showing was a summary of documentation of its purported sales of counterfeit goods amounting to abstracted testimony regarding documents never produced and in the sole possession of the Defendant.

This Court held that in producing purported accounting of its profits from the sale of counterfeit goods, Defendant had met its burden despite that it was the same type of evidence that was specifically rejected by the court

---

[14] No. 02 Civ. 7926 (TPG), 2003 U.S. Dist. LEXIS 6381, at *7.
[15] *North Face v. TC Fashions*, 2006 WL 838992 at *3.
[16] *See, e.g., Balenciaga Am., Inc. v. Dollinger*, 2010 U.S. Dist. LEXIS 107733, at *24 (S.D.N.Y. Oct. 8, 2010);
[17] *Id.* at *4 n.6.
[18] *Id.*
[19] Declaration of Tamara D. Tarbutton, dated Aug. 9, 2012, at ¶¶ 30-31.

4

in *North Face v. TC Fashions*.   In fact, DealExtreme's submission -- removed from the actual documentary

evidence by a level of abstraction -- is even less complete than the showing that the court held to be insufficient in

*North Face v. TC Fashions*.   Moreover, the need for such a showing is particularly acute where, as here, due to

DealExtreme's location abroad, Plaintiff has been unable to seize documents, as is the statutory entitlement of

plaintiffs in counterfeiting cases,[20] and where the Court has stopped expedited discovery.

      In essence, the Court allowed Defendant to put in proof -- without Plaintiff having the benefit of discovery

-- that which it might be entitled to at the end of the day.   The Court then allowed Defendant to use this self-serving

and unsupported information to bootstrap its argument for release of the Restrained Assets, which Plaintiff had

shown were used for the sale of counterfeit goods.   At this point in the case, Plaintiff and the Court lack complete

evidence of DealExtreme's profits from its counterfeiting of Plaintiff's products and thus neither can be assured that

restraint of $20,000 is sufficient to preserve Plaintiff's status quo as to its equitable right to an accounting of

Defendant's profits.

      This Court has gone against established precedent and policy considerations underlying remedies for

counterfeiting under the Lanham Act, including the rationale that "it is essential that trial courts carefully fashion

remedies which will take all the economic incentive out of trademark infringement" and undermined the stated goal

behind the Lanham Act's equitable remedies, namely,  "to achieve equity between or among the parties."[21] Rather it

has provided a roadmap to those counterfeiters operating outside the United States to escape any real liability for

their actions.

      **2.**       **The Court Erred As A Matter of Law in Failing To Find An Equitable Right to Damages Under the Lanham Act**

      Incident to its modification of the Preliminary Injunction, the Memorandum and Order likened statutory

damages under the Lanham Act to damages awarded in contract or tort cases.[22]  However, "all Lanham Act remedies

are equitable in nature;"[23] specifically, an accounting of damages for use of counterfeit marks in connection with the

sale of goods is an equitable remedy.   Statutory damages are determined at the discretion of the district court and

may range from $1,000 up to, in the case of willful sales, $2 million, "as the court considers just" and "subject to the

---

[20] 15 U.S.C. § 1116(d)(1)(A) (court may grant an order providing for, *inter alia*, "seizure of . . . records
documenting the manufacturer, sale, or receipt of things involved in such violation.").
[21] *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000).
[22] Memorandum and Order at 2.
[23] *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 471 (8th Cir. 2011).

principles of equity."[24]  Reading this language, courts have long maintained that awards for damages under the Lanham Act are undoubtedly "subject to principles of equity."[25]  The Ninth Circuit in *Reebok v. Marnatech*, well established, from a considered reading of the text of the Lanham Act, that the Court has the "equitable authority" to secure a plaintiff's recovery of, *inter alia*, damages that it has sustained, including statutory damages based on the use of counterfeit marks in connection with the sale of goods, by restraining a defendant's assets.[26]  The policy considerations underlying remedies for counterfeiting under the Lanham Act include the rationale that "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement."[27]  Congress enacted the provision of the Lanham Act providing for statutory damages in counterfeiting cases knowing that "'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible.'"[28]

With these policies in mind, and given the Lanham Act's mandate to set statutory damages, "as the court considers just," courts have considered a broad range of factors in setting statutory damages awards under the Lanham Act, including: (1) a plaintiff's lost revenues; (2) the value of a plaintiff's trademark; (3) the "deterrent effect on others besides the defendant;" (4) "whether the defendant's conduct was innocent or willful;" (5) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (6) "the potential for discouraging the defendant."[29]  In the exercise of its equitable powers, a court may "treble any determinable damages when awarding statutory damages because statutory damages give even greater weight to the need to deter and punish."[30]  Ultimately, a plaintiff that has established infringement "is entitled, subject to the principles of equity, to recover" and "[t]he goal behind §§ 1116 and 1117 remedies is to achieve equity between or among the parties;" the court should determine the remedy to be applied based on a "case-by-case evaluation" of "the nature of the infringing conduct and its adverse effects."[31]

---

[24] 15 U.S.C. § 1117(a), (c).
[25] *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*, 433 F.2d 686, 706 (2d Cir. 1970).
[26] Pl. Supp. Opp. Br. at 9-10 (quoting *Reebok v. Marnatech*, 970 F.2d 552, 562 (9th Cir. 1992)).
[27] *Playboy*, 692 F.2d at 1275.
[28] *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y.) (quoting S. Rep. No. 104-177, at 10 (1995)), *amended in part*, 328 F. Supp. 2d 439 (2004); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (same).
[29] *Louis Vuitton Malletier v. WhenU.com, Inc.*, No. 05 Civ. 1325 (LAK), 2006 U.S. Dist. LEXIS 97550, at *4 (S.D.N.Y. Nov. 15, 2006) (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).
[30] *Gucci v. Duty Free Apparel*, 315 F. Supp. 2d at 522 (S.D.N.Y. 2004).
[31] *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000).

Declining Plaintiff's request that the Court exercise its equitable powers to restrain assets sufficient to satisfy a judgment for statutory damages, the Memorandum and Order reasoned that such a restraint of "money damages" would be contrary to the holding in *Grupo Mexicano de Desarrollo. S.A. v. Alliance Bond Fund, Inc.*[32] *Grupo Mexicano v. Alliance* is inapposite. There the Supreme Court held that on a "contract claim for money damages," the district court had no authority to issue a preliminary injunction preventing disposal of assets in which the petitioning noteholders claimed "no lien or equitable interest."[33] Here, by contrast, Plaintiff has an equitable interest in the preservation of the possibility of recovering statutory damages, which, unlike money damages of a sum certain that might be recovered in a contract case, are set at the discretion of the court "as the court considers just." That *Reebok v. Marnatech* preceded *Grupo Mexicano v. Alliance* is of no moment. The contractually-determined money damages at issue in the latter case are not just of a different species than statutory damages for use of counterfeit marks under the Lanham Act, they are of a different genus entirely. *Reebok v. Marnatech*'s careful and specific analysis of the equitable nature of awards under the Lanham Act survives *Grupo Mexicano v. Alliance*. Finally, *Grupo Mexico* has been explicitly distinguished in a counterfeiting case, where Judge Sifton stated, "[T]his is an action to recover damages for willful violations of the trademark provisions of the Lanham Act, not an action seeking adjudication of a contract claim, and numerous courts have held that injunctive relief freezing assets in order to ensure availability of final relief is permissible under the Lanham Act."[34]

In support of the same proposition, the Memorandum and Order also cited to *Gucci Am. v. Weixing Li*, presumably based on a reading that here the court there implicitly determined that statutory damages are not equitable in nature and thus stated, "courts since *Grupo Mexicano v. Alliance* have found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets."[35] Plaintiff respectfully submits that this interpretation reads more into *Gucci v. Li* than is there. In fact, statutory damages are not mentioned in *Gucci v. Li* and if and to the extent that the court presumed that statutory damages are not equitable in nature, without stating such or analyzing the issue, it would have been incorrect. It is more likely

---

[32] Memorandum and Order at 2 (citing *Grupo Mexicano v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999)).
[33] *Id.* at 310, 333.
[34] *Motorola, Inc. v. Abeckaser*, No. 07-cv-3963, 2009 U.S. Dist. LEXIS 40660, at *14-*15, n.4 (E.D.N.Y. May 14, 2009) (citing *North Face v. TC Fashions*, 2006 WL 838993, at *3 (citing *Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok v. Marnatech*, 970 F.2d at 559)).
[35] Memorandum and Order at 2 (citing *Gucci America, Inc. v. Weixing Li*, No. 10. Civ. 4974, 2011 WL 6156936, at *4 (S.D.N.Y. Aug. 23, 2011) (quoting *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Services of VA.*, 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001))).

DWT 20518658v3 0095938-000002

that the court did not consider the nature of statutory damages at all. In fact, this quote from *Gucci v. Li* was quoted in full from another case involving money damages in a contract case.[36]

Should Plaintiff prevail on its claim in this action, it will be entitled to equitable relief of Defendant's profits and any damages sustained by Plaintiff, or in the alternative, equitable relief in the form of statutory damages up to two (2) million dollars per registered trademark per type of good.[37] Here, a high statutory damage award would be appropriate. Courts have found that high awards should be made where counterfeiting of a plaintiff's marks is endemic[38] or where a defendant markets counterfeit goods on the Internet to the "virtually limitless number of customers" available by that channel,[39] both of which factors are present in this case.[40] In *Burberry Ltd. v. Designers Imps., Inc.*, an award of $1.5 million was granted based on evidence of sales of twelve counterfeit Burberry-branded items. In reaching this award, the court gave weight to the value of Burberry's trademarks, the goal of deterring the defendant and others from similar conduct and defendant's "ability to reach a vast customer base through internet advertising."[41] Because of the possibility that the Court will determine that Plaintiff is due such an amount of statutory damages, the asset restraint should be left as is, to ensure that Plaintiff may so recover.

The Court "has the power to issue a preliminary injunction to prevent [Defendant] from dissipating assets in order to preserve the possibility of [the] equitable remed[y]" of an award of statutory damages.[42] Plaintiff respectfully submits that it was error to decide otherwise.

## B.    The Balance of Hardships Favors the Granting of a Stay

### 1.    Klipsch Will Be Irreparably Harmed Absent A Stay

The remedies afforded by the Lanham Act to combat counterfeiting are equitable in nature. The harm to Klipsch if a stay is not granted will be significant and irreparable. Should Klipsch be forced to proceed with its appeal without a stay, DealExtreme will no doubt move the funds out of the accounts, and beyond the Court's reach, denying Plaintiff the equitable remedies provided it under the Lanham Act and in effect mooting this appeal. Courts

---

[36] *See Quantum Corp. Funding*, 144 F. Supp. 2d at 242, 250 (plaintiffs seek to enjoin disposal of assets pledged under loan and security agreements and money damages).
[37] 15 U.S.C. § 1117 *et seq.*
[38] *Coach, Inc. v. Allen*, No. 11 Civ. 3590, 2012 U.S. Dist. LEXIS 100829, at*28 (S.D.N.Y. 2012); *Feiya Cosmetics, LLC v. Beyond Beauty Int'l, LLC*, No. C-10-00967 JCS, 2011 U.S. Dist. LEXIS 111769, at *38 (N.D. Cal. Aug. 29, 2011).
[39] *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09 CV 4810 (RRM), 2011 U.S. Dist. LEXIS 32249, at *5-*6 (E.D.N.Y. 2011); *see also Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002).
[40] *See* Supp. Wukoson Decl. Exs. D & E (website statistics for dx.com and dealextreme.com reflecting the global customer base of DealExtreme's Internet retail operation).
[41] No. 07 Civ. 3997 (PAC), 2010 U.S. Dist. LEXIS 3605, at *28-*29 (S.D.N.Y. Jan. 19, 2010).
[42] *The Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988).

8

have commented on the "new era of counterfeiting"[43] in which overseas-based defendants operating exclusively on the Internet can reflexively remove themselves from the reach of U.S. Courts.  DealExtreme, as an overseas, Internet-based defendant who is dealing in counterfeit goods, embodies the risks of this new era, which must be managed through the employment of appropriate remedies.  DealExtreme's status as a publicly-held company offers Plaintiff and the Court little security that the remedies to which Plaintiff is entitled will be available after this matter has been adjudicated.  In China, in many instances, such "so-called authentic sources" cannot be trusted; "[m]any companies counterfeiting goods are publicly traded."[44]  Courts have found this "quintessential form of prejudice" to constitute irreparable harm sufficient to justify the granting of a stay.[45]  The Second Circuit has employed similar reasoning in holding that a stay is appropriate to keep funds in place while the disposition of those funds is being challenged on appeal.[46]  Klipsch has "a right to appellate review" of the Memorandum and Order, and deprivation of that right would be an irreparable harm.[47]

Relatedly, because the funds will likely be gone for good if the restraint is lifted, Plaintiff's right to an accounting under the Lanham Act would be prejudiced in the absence of a stay.  Lanham Act Section 35 remedies are some of the most useful tools the trademark holder has and each is a vital and "convincing deterrent" to those, like DealExtreme, "who engage[] in trademark piracy."[48]  Yet the Court's Memorandum and Order deprives Klipsch of this essential remedy, which, once the funds are gone from the accounts, will never again be available.  That is the very essence of irreparable harm, which exists where "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned

---

[43] *Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002).
[44] "Postcards from Counterfeit Hot Spots," *CSO*, November 2005, at p. 34, available at http://books.google.com/books?id=6F8EAAAAMBAJ&pg=PA34&lpg=PA34#v=onepage&q&f=false.
[45] *Adv. Mining Sys., Inc. v. Lutin*, 173 B.R. 467, 468-69 (Bkr. S.D.N.Y. 1994) (staying distribution of debtors' assets pending appeal); *In re St. Johnsbury Trucking Co.*, 185 B.R. 687, 690 (S.D.N.Y. 1995) (same).
[46] *In re Agent Orange Prod. Liability Litig.*, 804 F.2d 19, 19 (2d Cir. 1986) (refusing to lift stay of distribution of settlement award, pending appeal).
[47] *Id.*
[48] *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982); 15 U.S.C. § 1117(a).

to the positions they previously occupied."[49]  And so the risk of harm in this case falls

disproportionately on Klipsch.  DealExtreme "has not articulated any cognizable injury[.]"[50]

There can be little doubt that the balance of the hardships tips decidedly in Klipsch's favor.

### 2.    DealExtreme Will Not Suffer "Substantial Injury"

In cases, like this one, where any possible injury to the opposing party is very small, the

burden on the party seeking a stay is significantly lessened.[51]  Courts in this Circuit have held

that where a party opposing the stay does not articulate any cognizable injury that it will suffer if

the stay is granted, then the moving party need only show "some possibility of success."[52]

In its briefing preceding issuance of the Preliminary Injunction and supporting the

modification thereof, DealExtreme made no showing that the restraint of $2 million would cause

it sufficient hardship to tip the balance of hardships in its favor.  The memoranda of law

submitted by DealExtreme in this action in fact did not contain such a contention.  Rather,

DealExtreme's declarant, Daniel Chow, first provided a list of non-sequiturs equally applicable

to any company doing business in 2012: that "ePRO e-Commerce is doing business in a difficult

environment," has a large number of competitors selling similar items, and has dealt with

increased credit card fraud, all of which Mr. Chow says have squeezed DealExtreme's margins.[53]

He then without any support asserted that the restraint forced DealExtreme to delay payments to

suppliers.[54]

DealExtreme never provided a complete explanation as to the harm done to it by the

restraint of $2 million because it cannot.  DealExtreme reported gross revenues for the first nine

---

[49] *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (prospect that insolvent defendant would no longer have sufficient funds to satisfy claims by the time case was completed constituted irreparable harm sufficient for granting of preliminary injunction).
[50] *Thapa*, 460 F.3d at 336.
[51] *Thapa v. Gonzales*, 460 F.3d 323, 335-36 (2d Cir. 2006); *Greenridge v. Allstate Ins. Co.*, No. 02 Civ. 9796, 2003 WL 22871905, at *2 (S.D.N.Y. Dec. 3, 2003).
[52] *Id.*
[53] Suppl. Chow Decl. ¶ 18.
[54] Suppl. Chow Decl. ¶ 19.

DWT 20518658v3 0095938-000002

(9) months of this fiscal year of approximately $130 million.[55]  The Court did not restrain a

critical mass of DealExtreme's assets as would do harm to its liquidity or operation as a going

concern.  It restrained $2 million dollars in one PayPal account.  DealExtreme has multiple

PayPal accounts, in addition to bank accounts in China.  For one account alone, nearly $14

million of funds have flowed into the account in each of the past three months.  DealExtreme's

PayPal accounts are used as channels through which funds flow, and PayPal records reflect that

the ultimate repository for these transient funds are accounts held abroad with foreign banks such

as Bank of China, Heng Seng, and HSBC.[56]

Further, as Plaintiff has stated,[57] Plaintiff is amenable to amending the Preliminary

Injunction to provide for payment of expenses related to legitimate business expenses as was

provided for by the injunctions in *Reebok v. Marnatech* and its progeny.  Thus, the harm

DealExtreme would suffer from a stay is close to "zero, and the stay should be granted."[58]

### C.    The Public Interest Favors a Stay

The strong public interest in the enforcement of "the trademark laws [to] protect . . . the

public [from] being misled" is well-established.[59]  This powerful interest extends beyond the

mere need to keep infringing goods off the market, but also to the imposition of penalties that are

sufficiently strict.  As the Ninth Circuit has observed, "it is essential that the trial courts carefully

fashion remedies which will take all the economic incentive out of trademark infringement."[60]

This aim cannot be accomplished if DealExtreme, an admitted counterfeiter with revenues in the

---

[55] Declaration of Daniel Chow, dated Sept. 7, 2012 ("First Chow Decl.") ¶ 4.
[56] *See* Declaration of Tamara D. Tarbutton, dated Sept. 12, 2012, Ex. Z.
[57] Pl. Supp. Opp. Br. at 17.
[58] *Greenridge*, 2003 WL 22871905, at *2.
[59] *Empresa Cubana Del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399, 2004 WL 925615, *4 (S.D.N.Y. April 30, 2004) (internal quotation omitted) (public interest in protecting public from "confusion and deception which flows from the copying of marks" was a factor favoring granting of stay); *see also Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 460 (S.D.N.Y. 2008) (public interest in prevention of consumer confusion supported grant of preliminary injunction).
[60] *Playboy*, 692 F.2d at 1275.

11

hundreds of millions, is allowed to skate by with only $20,000 in frozen assets as the consequence of its wrongful actions.

With the rapid rise of counterfeiting on the Internet, the challenges facing trademark owners seeking to police their marks have exponentially grown.  The digital revolution has allowed counterfeiters based overseas to sell their fraudulent goods to unsuspecting U.S. consumers with near impunity.   The sale of counterfeit products from China alone "costs foreign firms an estimated $20 billion a year in lost profits."[61]  Because DealExtreme is based in China, it has been able to mislead purchasers in the U.S. from the safety of its overseas haven, and Klipsch has few tools to stop them.  Klipsch cannot seize the counterfeit products because the warehouse is in Shenzhen.  Klipsch has no access to the ill-gotten monies DealExtreme may hold in overseas banks.

An order from a U.S. court restraining the overseas counterfeiter's assets to allow for an equitable accounting of profits is the best weapon that brand owners have to combat this new brand of digital wrongdoer.  In many cases, like this one, where the overseas counterfeiters are well-funded and well-organized, it may indeed be the only effective method of deterrence.  The Memorandum and Order not only strips Klipsch of this vital tool to protect its brand, but it sends a message to counterfeiters that if caught, they need only come to court and claim few sales in order to avoid any serious consequences for their wrongful actions.  This is precisely the sort of "inadequate judicial response to trademark infringement" of which the Ninth Circuit warned.[62]  Accordingly, the public interest strongly militates in favor of staying the Memorandum and Order.

---

[61] "China Big in Counterfeit Goods", Mark Litke, ABC News.com (April 21, 2012). *Available at* http://abcnews.go.com/WNT/story?id=130381&page=1.
[62] *Playboy*, 692 F.2d at 1275.

DWT 20518658v3 0095938-000002

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that the Court grant its motion for (i) an immediate interim stay of the Memorandum and Order, pending resolution of this motion and (ii) for a stay of enforcement of the Memorandum and Order to the extent that it reduced the amount of assets presently frozen to $20,000, pursuant to Fed. R. Civ. P 62(c), pending appeal.  In the alternative, Klipsch requests that the Court enter a temporary stay to permit it to apply to the Second Circuit for a stay pending appeal.


Dated: October 15, 2012                    Respectfully submitted,

                                           DAVIS WRIGHT TREMAINE LLP

                                           By:   /s/ G. Roxanne Elings
                                               G. Roxanne Elings
                                               (RoxanneElings@dwt.com)
                                               Charles A. LeGrand
                                               (CharlesLeGrand@dwt.com)
                                               George P. Wukoson
                                               (GeorgeWukoson@dwt.com)

                                           1633 Broadway, 27th Fl.
                                           New York, NY 10019-6708
                                           Telephone: (212) 489-8230
                                           Facsimile: (212) 489-8340
                                           *Attorneys for Plaintiff Klipsch Group, Inc.*

13