IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KLIPSCH GROUP, INC.,

                Plaintiff,

     v.

BIG BOX STORE, LIMITED dba
BIXBOXSTORE.COM *et al*.

             Defendants.

Case No. 12-CV-6283 (AJN)

**DEFENDANT DEALEXTREME.COM'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S ORDER TO SHOW CAUSE FOR A STAY PENDING APPEAL FROM
THE OCTOBER 11, 2012 ORDER MODIFYING INJUNCTION**

BAKER & McKENZIE LLP
Douglas M. Tween
John A. Basinger
1114 Avenue of the Americas
New York, New York 10036
(212) 626-4100
Attorneys for Defendant
Dealextreme.com

TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

      I.     Plaintiff Is Unlikely To Succeed On The Merits Of The Appeal ......................... 3

           A.     Standard of Review of Preliminary Injunction .......................................... 3

           B.     A Freeze Covering Statutory Damages Is Not Permitted .......................... 4

                 1.     *Feltner* and Its Progeny Indicate that Statutory Damages Are Legal, Not Equitable ............................................................... 6

                 2.     Accounting Does Not Include Statutory Damages ....................... 7

           C.     This Court Did Not Abuse Its Discretion in Finding Dealextreme's Documentary and Testimonial Evidence Sufficient ................................. 8

      II.    Plaintiff Will Not Suffer Irreparable Harm if a Stay Is Denied .......................... 10

      III.   Dealextreme Is Harmed By Maintaining The Stay ............................................. 11

      IV.   The Public Interest Does Not Support A Stay ................................................... 11

CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Co. v. Mohan*,
Civ. No. 09-1413.................................................................................................6

*Balenciaga Am., Inc. v. Dollinger*,
2010 U.S. Dist. Lexis 107733 (S.D.N.Y. Oct. 8, 2010)("*Balenciaga*"). Plaintiff's
Mem. at 4-6.................................................................................................8, 9

*Bar-Meir v. N. Am. Die Casting Assoc.*,
55 Fed. Appx. 389 (8th Cir. 2003).................................................................6

*Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*,
433 F.2d 686 (2d Cir. 1970), Plaintiff's Mem. at 8.......................................5

*Cartier Int'l B.V. v. Liu*,
No. 02 Civ. 7926 (TPG), 2003 U.S. Dist. LEXIS 6381 (S.D.N.Y. April 16,
2003)("*Cartier*")............................................................................................8

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962).........................................................................................6

*Fancaster, Inc. v. Comcast Corp.*,
Civ. No. 08-2922 (DRD), 2012 U.S. Dist. LEXIS 32287 (D.N.J. March 9, 2012)...................6

*Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998).........................................................................................5

*Gabbanelli Accordions & Imports L.L.C. v. Gabbanelli*,
575 F.3d 693 (7th Cir. 2009) .........................................................................7

*GoPets Ltd. v. Hise*,
657 F.3d 1024 .................................................................................................5

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999).........................................................................................6

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
315 F.Supp.2d 511 (S.D.N.Y. 2004), Plaintiff's Mem. at 8.............................5

*Hilton v. Braunskill*,
481 U.S. 770 (1987).........................................................................................2

*Louis Vuitton Malletier, S.A., v. Akanoc Solutions, Inc.*,
No. C 07-03952 JW, 2010 U.S. Dist. LEXIS 85266 (N.D. Cal. March 19, 2010), *rev'd
in part* 658 F.3d 936 (9th Cir. 2011)...............................................................6

*Masters v. UHS of Del., Inc.*,
   631 F.3d 464 (8th Cir. 2011), Plaintiff's Mem. at p. 7 n.23....................................................5

*Motorola v. Abeckaser*,
   No. 07-cv-3963, 2009 U.S. Dist. LEXIS 40660 (E.D.N.Y. May 14, 2009) ........................4, 5

*North Face Apparel Corp. v. TC Fashions, Inc.*,
   No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30, 2006)
   ("*North Face*") ......................................................................................................8, 9, 10

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
   692 F.2d 1272 (9th Cir. 1982), Plaintiff's Mem. at 8....................................................5

*Reebok v. Marnatech*,
   970 F.2d 552 (9th Cir. 1992) ..........................................................................................4

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010).............................................................................................10

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
   200 F.3d 358 (5th Cir. 2000), Plaintiff's Mem. at 9......................................................5

*SEC v. Citigroup Global Mkts., Inc.*,
   673 F.3d 158 (2d Cir. 2012).............................................................................................2

*Tiffany (NJ) Inc. v. Luban*,
   282 F. Supp.2d 123 (S.D.N.Y. 2003), Plaintiff's Mem. at 8..........................................5

*Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993)...........................................................................................7

*Zervos v. Verizon New York, Inc.*,
   252 F. 3d 163 (2d Cir. 2001)............................................................................................3

**STATUTES**

15 U.S.C. 1117.....................................................................................................................6, 7

Senate Section-by-Section Analysis of the Anticounterfeiting Consumer Protection Act
   of 1995 ............................................................................................................................7

**OTHER AUTHORITIES**

141 Cong. Rec. 12079 (Aug. 9, 1995) ...............................................................................7

Defendant Dealextreme.com ("Dealextreme") submits this Supplemental Memorandum in opposition to Plaintiff's Motion for a Stay Pending Appeal from the October 11, 2012 Order Modifying Injunction and to its Memorandum in Support thereof dated October 15, 2012 and filed October 17, 2012 ("Plaintiff's Mem.").

## INTRODUCTION

Plaintiff makes an admission in its Memorandum that should be fatal to its Motion for Stay: Plaintiff asserts that "[f]or one [of Dealextreme's PayPal] accounts alone, nearly $14 million of funds have flowed into the account in each of the past three months."  Plaintiff's Mem. at 14.  Thus, contrary to Plaintiff's agitations, failure to stay this Court's October 11 Order (the "Order") will not moot Plaintiff's appeal nor cause it any harm; if the Second Circuit determines that this Court abused its discretion in failing to freeze a full $2 million, the PayPal account in question will fill up to the $2 million level in just over four days.  It is ludicrous to suggest that Dealextreme would dramatically and detrimentally restructure its business model by discontinuing use of PayPal just to deny Plaintiff any recovery, given that the business cost of doing so would far outweigh any judgment Plaintiff could obtain.

Consistent with Plaintiff's admission, this Court found that:

> if plaintiff were to obtain a judgment against DealExtreme, at the end of litigation in its normal course it appears there would be cash flow passing through DealExtreme's accounts for plaintiff to seize as a judgment debtor should DealExtreme fail to pay award of damages. The evidence before me does not lead to a conclusion there is a risk of DealExtreme disappearing with all of its money in the event that plaintiff should prevail in this case . . . .

Sept. 14, 2012 Tr. at 51:21-52:3.  In short, there is no harm to Plaintiff from the failure to stay the Order.  Plaintiff's application for stay should be denied.

1

Dealextreme respectfully requests that the Court continue to take note of Dealextreme's presence and cooperation in these proceedings.  Contrary to many of the mistaken assertions in Plaintiff's original *ex parte* filing, Dealextreme is not a sketchy fly-by-night enterprise that would fail to appear at any court proceedings, but is instead a legitimate and diverse public company that stands ready to defend its rights in court.  Plaintiff alleges that its investigator purchased a single unit of merchandise valued at approximately $30.  Plaintiff failed to notify Dealextreme of its claim of IP rights violations for over six months, until it filed this suit, during which time Dealextreme had long since ceased listing any Klipsch-branded items, depriving it of the opportunity to investigate and mitigate any damages.  Dealextreme has presented uncontroverted evidence that it undertakes serious efforts to avoid listing counterfeit goods on its site and that it quickly removes items reported to be counterfeit.  Dealextreme denies that it has any liability for infringement, both because it is not a direct seller and because it has not been able to undertake any investigation concerning the alleged counterfeit item sold.  Nevertheless, Dealextreme has voluntarily provided specific sales records; in addition to the records submitted in court filings, Dealextreme provided records to Plaintiff that include name and address information for each U.S. purchaser of all Klipsch-branded goods ever sold through Dealextreme.  In response, Plaintiff repeatedly bleats that Dealextreme should be presumed to be lying without presenting a scintilla of evidence.  This Court's retention of a freeze of $20,000 in assets is more than fair to Plaintiff and the reduction in freeze should not be stayed pending appeal.

## ARGUMENT

Plaintiff fails to establish entitlement to a stay pending appeal under any of the factors governing such stays: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *SEC v. Citigroup Global Mkts., Inc.*, 673 F.3d 158, 163 (2d Cir. 2012), quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

**I.    Plaintiff Is Unlikely to Succeed on the Merits of the Appeal**

**A.    Standard of Review of Preliminary Injunction**

In order to succeed on its appeal, Plaintiff will have to establish that this Court abused its discretion in entering a preliminary injunction freezing less than $2 million of Dealextreme's assets. *See Zervos v. Verizon New York, Inc.*, 252 F. 3d 163, 167, 172 (2d Cir. 2001). A district court abuses its discretion if its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or if its decision cannot be located within the range of permissible decisions. *Id.*

In this case, Plaintiff must argue that a district court abuses its discretion any time it fails to freeze the statutory maximum damages. We are aware of no legal support for such an argument.

Dealextreme understands that this Court's decision to reduce the restraint of assets frozen rests upon two independent bases: (1) this Court questions whether it has the authority to freeze assets that may be available only as damages, rather than an equitable award of defendant's profits and thus chose to confine the asset freeze to that amount adequate to satisfy an equitable remedy (Order at 2), and (2) regardless of whether this Court has authority to freeze assets to preserve damages remedies as opposed to equitable remedies, this Court determined as an issue of fact that Dealextreme met its burden to produce documentary evidence that assets above $20,000 are not linked to the profits of sales of allegedly-counterfeit Klipsch products (Order at 3-4).

3

Thus, to prevail on its appeal, Plaintiff will have to prevail on each of two separate issues: (a) that the applicable law requires that a freeze of assets be sufficiently large to cover money damages as well as equitable remedies and (b) that the detailed sales records and testimony provided by Dealextreme are insufficient as a matter of law to meet its burden.

## B.      A Freeze Covering Statutory Damages Is Not Permitted

Plaintiff argues that all damages available under the Lanham Act are equitable in nature and that assets sufficient to cover statutory damages must be frozen.  Plaintiff's Mem. at 7-11. Yet Plaintiff cites no case holding that statutory damages are equitable and subject to a prejudgment freeze, much less a controlling case in this jurisdiction.

Plaintiff asserts that *Reebok v. Marnatech*, 970 F.2d 552 (9th Cir. 1992) "well established . . . that the Court has the 'equitable authority' to secure a plaintiff's recovery . . . including statutory damages," Plaintiff's Mem. at 7.  *See also id.* at 9.  To the contrary, *Reebok* was explicit that "we do not decide . . . the authority of the district court to freeze *each* of the assets the transfer of which is limited by the injunction," because the defendant failed to raise the issue on appeal.  *Id.* at 560-61 n.11.  Indeed, *Reebok* repeatedly refers to the ability to freeze assets to preserve the right to an equitable accounting.  *Id.* at 559 ("Because the Lanham Act authorizes . . . . an accounting of Betech's profits as a form of final equitable relief, the district court had the inherent power to freeze Betech's assets in order to ensure the availability of ***that final*** relief. (emphasis added), 560-61 n.11 ("Lanham Act provides for an equitable accounting of the defendant's profits, see supra at 15-16, and assets that represent ***those accumulated profits*** therefore may properly be frozen" (emphasis added)); 561 ("freezing Betech's assets was a provisional remedy of the same equitable character as the final relief in the form of an ***accounting of Betech's profits*** the district court was authorized to award" (emphasis added)).

Plaintiff further asserts that *Motorola v. Abeckaser*, No. 07-cv-3963, 2009 U.S. Dist. LEXIS 40660 at *14-15, n.4 (E.D.N.Y. May 14, 2009) stands for the proposition that the Lanham Act generally permits asset freezes to safeguard statutory damages. Plaintiff's Mem. 9-10 n.34. Plaintiff omits that in *Motorola*, the court had already entered summary judgment on liability against the defendant at the time of the preliminary injunction proceedings at issue and the defendant had transferred assets in violation of a stipulation between the parties which gave the plaintiff "something akin to a security interest in defendant's assets." *Motorola* at *10, *14-15 & n.4. *Motorola* provides no support for a prejudgment freeze of assets, particularly where this Court has already found that there will be sufficient cash flow available to satisfy a judgment against Dealextreme if Plaintiff obtains a judgment. Sept. 14, 2012 Tr. at 51:21-52:3.

None of the remainder of the cases cited by Plaintiff in support of its argument that statutory damages are equitable rather than legal analyze the point, much less whether a court has the authority to issue a pre-judgment freeze of assets to protect statutory damages.[1]

---

[1] *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 469, 471, 475 (8th Cir. 2011), Plaintiff's Mem. at p. 7 n.23 (rejecting defendant's argument than no monetary award at all should have been given in that case and affirming an award of profits after trial); *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*, 433 F.2d 686, 706-07 (2d Cir. 1970), Plaintiff's Mem. at 8 n.27 (holding that plaintiff was not entitled to any damages, notwithstanding that defendant had infringed, where there was no showing of fraud or palming off); *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982), Plaintiff's Mem. at 8 n.27 (reversing trial court's failure to award an accounting of defendant's profits post-trial); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004), Plaintiff's Mem. at 8 n.28 (involving post-trial proceeding for damages); *Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003), Plaintiff's Mem. at 8 n.28 (awarding statutory damages following default judgment); Louis Vuitton Malletier v. WhenU.com, Inc., No. 05 Civ. 1325 (LAK), 2006 U.S. Dist. LEXIS 97550, at *4 (S.D.N.Y. Nov. 15, 2006), Plaintiff's Mem. at 8 n.29 (awarding statutory damages following default judgment); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000), Plaintiff's Mem. at 9 n.31 (affirming trial court's refusal to award an accounting of profits following jury verdict of infringement).

1.     *Feltner* and Its Progeny Indicate that Statutory Damages Are Legal,
Not Equitable

This Court asked the parties to address Plaintiff's argument that statutory damages under

the Lanham Act constitute equitable relief in light of *Feltner v. Columbia Pictures Television,*

*Inc.*, 523 U.S. 340 (1998).  Every case that we have been able to find that considers *Feltner*

indicates that statutory damages under the Lanham Act are legal in nature, not equitable, other

than an award of *minimum* statutory damages.  *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034

("cybersquatting is a form of trademark infringement. It is therefore likely analogous to a

common-law cause of action," citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73 (1962),

but holding that there is no right to jury trial for an award of *minimum* statutory damages); *Bar-*

*Meir v. N. Am. Die Casting Assoc.*, 55 Fed. Appx. 389 (8th Cir. 2003) (reversing district court's

award of damages where jury had been demanded); *Fancaster, Inc. v. Comcast Corp.*, Civ. No.

08-2922 (DRD), 2012 U.S. Dist. LEXIS 32287 at \*30-31 (D.N.J. March 9, 2012) (holding that

statutory damages claims are triable by jury); *3M Co. v. Mohan*, Civ. No. 09-1413 ADM/FLN,

2010 U.S. Dist. LEXIS 124672 at \*79-86 (D. Minn. Nov. 24, 2010) (holding that upon demand,

jury trial is constitutionally required for statutory damages; collecting authorities), *aff'd* No.

2011-1328, 2012 U.S. App. LEXIS 10753 (Fed. Cir. May 29, 2012)(holding no right to jury trial

following 3M's withdrawal of its statutory damages claims); *Louis Vuitton Malletier, S.A., v.*

*Akanoc Solutions, Inc.*, No. C 07-03952 JW, 2010 U.S. Dist. LEXIS 85266 at \*43-44 (N.D. Cal.

March 19, 2010) ("clear law permit[s] juries to decide the amount of statutory damages . . . ."),

*rev'd in part* 658 F.3d 936 (9th Cir. 2011)(reversing part of award as exceeding statutory

maximum).

Under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308,

333 (1999) and in light of the weight of authority holding that statutory damages are legal, rather

than equitable, this Court lacks authority to enjoin Dealextreme's assets to satisfy a possible award of statutory damages beyond the $1,000 minimum available under 15 U.S.C. 1117(c).

### 2.   Accounting Does Not Include Statutory Damages

The remedy of providing an infringer's profits, also known as a disgorgement of profits or an accounting of profits, originated as a way to compensate a plaintiff for its actual damages, with the rationale that the defendant's profits represent an approximation of lost sales to the plaintiff. *See* McCarthy on Trademarks § 30:59. In assessing profits, the plaintiff is required to prove the defendant's sales, and the defendant must prove any costs or deductions from those sales. 15 USC 1117(a).

An accounting of profits is wholly distinct from statutory damages, which are intended to provide a remedy to plaintiffs who are unable to prove actual damages. *See* McCarthy on Trademarks § 30:95. This intention is clear from the Senate Section-by-Section Analysis of the Anticounterfeiting Consumer Protection Act of 1995, which amended 15 USC 1117 to provide for statutory damages in cases involving the use of counterfeit trademarks: "The option to elect statutory damages in counterfeit cases ensures that trademark owners and adequately compensated and that counterfeiters are justly punished, even in cases where the plaintiff is unable to prove actual damages …" 141 Cong. Rec. 12079, 12084 (Aug. 9, 1995).

After this amendment to the Lanham Act, 15 USC 1117(c) provides that, in cases involving the use of a counterfeit mark, the plaintiff may elect to recover statutory damages "instead of actual damages and profits." It is clear from the statute, case law, and commentary that a plaintiff cannot recover both an accounting of profits and statutory damages. *See e.g. Gabbanelli Accordions & Imports L.L.C. v. Gabbanelli*, 575 F.3d 693 (7th Cir. 2009) ("statutory damages may be awarded only in cases in which compensatory damages are not awarded for the same violation") *citing Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366

(2d Cir. 1993); McCarthy on Trademarks § 30:95.  As an accounting of profits precludes an award of statutory damages, the Court may not within its equitable powers restrain assets to ensure that funds are available for an award of statutory damages.

All applicable authority indicates that a district court is permitted to enter a prejudgment freeze of assets only as to those assets that would satisfy an equitable award of a defendant's profits, not as to assets that may satisfy the legal remedy of statutory damages.  Moreover, even if district courts have the authority to freeze assets to secure potential statutory damages awards, there is no authority suggesting that they abuse their discretion by failing to do so.

**C.    This Court Did Not Abuse Its Discretion in Finding Dealextreme's Documentary and Testimonial Evidence Sufficient**

Plaintiff contends that as a matter of law this Court could not credit Dealextreme's documentary and testimonial evidence establishing that it received gross revenues of less than $6,000 worldwide from the sale of Klipsch-branded products to show that other assets are not the proceeds of sales of counterfeit Klipsch products.  Plaintiff's Mem. at 4-7.  Plaintiff cites no binding authority whatsoever for this proposition.  Instead, it relies upon three district court cases, *Cartier Int'l B.V. v. Liu*, No. 02 Civ. 7926 (TPG), 2003 U.S. Dist. LEXIS 6381 (S.D.N.Y. April 16, 2003)("*Cartier*"), *North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) ("*North Face*") and *Balenciaga Am., Inc. v. Dollinger*, 2010 U.S. Dist. Lexis 107733 (S.D.N.Y. Oct. 8, 2010)("*Balenciaga*").  Plaintiff's Mem. at 4-6 & nn.14-18.  None of these cases supports Plaintiff's position.

*Cartier*, the earliest case cited by Plaintiff in which a court asserted a requirement that a defendant present documentary evidence to remove assets from a freeze, cites no legal authority for the proposition.  *Cartier* at *2.  Instead, it is clear from *Cartier* that the "documentary evidence" requirement was written into a preliminary injunction that was signed when no

defendant appeared for the preliminary injunction hearing.  *Id.*  The defendant in *Cartier* "has not even attempted to provide the proof that would justify a release of funds."  *Id.* at \*7.  *Cartier* does not discuss at all the nature of documents required by the plaintiff-drafted injunction, entered in absence of any defense argument, nor any judicial authority to require a defendant to provide documentary evidence.

   *North Face* well illustrates the fact-intensive nature of what documents are adequate to demonstrate that assets are not the proceeds of counterfeiting activities.  In *North Face*, plaintiffs had seized over 28,000 counterfeit POLO RALPH LAUREN shirts and 7,000 counterfeit North Face jackets.  *North Face* at \*3.  Contrary to Plaintiff's characterization of the case, the *North Face* court did not reject the defendant's showing because it was contained on spreadsheets.  *Cf.* Plaintiff's Mem. at 5.  Instead, it discussed the defendant's original declaration stating that $175,000 was "about 50% more than the sales of the North Face goods," 2006 U.S. Dist. LEXIS at \*8, then a following declaration with spreadsheets claiming that gross profits were about $235,000.  *Id.* at \*8, \*11.  The court contrasted the defendant's vacillating numbers with Plaintiff's calculations of profits of about $1.3 million, which were supported with packing lists and sales slips.  *Id.* at \*12-13.  The amount of assets frozen remained well below Plaintiff's documented calculation of profits, and less than one-seventh Plaintiff's calculation of annual revenues of $6.8 million on defendant's sales of counterfeit goods.  *Id.* at \*8-10 nn.4-5, \*13. Even in light of the dubious nature of the defendant's evidence, the court did not deny outright the request to reduce the freeze, but directed the parties to meet and confer to see if they could reach agreement, and indicated that further proceedings would be necessary if not.  *Id.* at \*13. *North Face* does not purport to dictate what type of documentation is adequate to demonstrate

that "particular assets [are] not the proceeds of counterfeiting activities."  *Id.* at * 11, quoting *Cartier* at *1 (alteration in original).

*Balenciaga* likewise contains no discussion of what sort of documents may be adequate to satisfy the questionable burden for a defendant to document that certain assets are not the proceeds of counterfeiting activities to reduce a freeze initially entered *ex parte*, as was the freeze in question here.  *Balenciaga*, 2010 U.S. Dist. LEXIS 107733 at *24.

Dealextreme submits that it is not consistent with *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) for a court to effectively "presume" that all of a defendant's assets -- or assets up to the statutory maximum damages -- are subject to attachment without some showing by Plaintiff to establish a reasonable relationship between the amount of profits and the amount of the asset freeze.  Dealextreme's view appears to be consistent with the actual results in *North Face* and other cases, none of which indicate such a disparity between the amount of the asset freeze and the amount likely to be derived from an accounting as Plaintiff seeks here.

Plaintiff cannot seriously claim that the funds in the PayPal accounts are derived from the sale of counterfeit Klipsch goods through Dealextreme.  Plaintiff does not dispute that no Klipsch-branded goods have been listed on Dealextreme since March of this year.  *See* Declaration of Daniel Chow, Dkt. No. 32, at ¶ 11.  Plaintiff can offer no rebuttal to the detailed sales records, supplier contracts and other documents provided by Dealextreme.

## II.     Plaintiff Will Not Suffer Irreparable Harm if a Stay Is Denied

As set forth in the introduction, this Court has already found that Dealextreme will be able to satisfy any reasonable judgment.  *See also North Face*, *supra*, 2006 U.S. Dist. LEXIS 14226 *20 (Plaintiffs consented to release the assets of Waitex, which argued that the freeze was improper because it was financially secure and would not "cut and run.").   Despite its

10

protestations to the contrary, Plaintiff agrees: "nearly $14 million of funds have flowed into the account in each of the past three months."  Plaintiff's Mem. at 14.  Thus, if a higher freeze is imposed by the Second Circuit, or if Plaintiff miraculously is able to obtain a judgment against Dealextreme for statutory maximum damages, it will take all of about four days for those funds to build back up in the PayPal account.  Plaintiff's right to an effective appeal is in no way imperiled by allowing the October 11 Order to become effective.

### III.      Dealextreme Is Harmed by Maintaining the Stay

Notwithstanding Dealextreme's significant revenues, maintaining the stay does impose hardships upon Dealextreme.  As set forth in the Declaration of Daniel Chow dated Sept. 21, 2012, Dkt. No. 54, at ¶¶ 18-19, continuing such a large freeze may significantly impact ePRO e-Commerce's business.

### IV.      The Public Interest Does Not Support a Stay

Plaintiff's argument concerning the public interest, Plaintiff's Mem. at 14-16, deals in generalities and jingoism, and notably says little about Dealextreme.  Dealextreme has appeared, produced documents, answered interrogatories, provided sworn declarations and otherwise shown that it will be present to answer Plaintiff's accusations, and in the event of a verdict for Plaintiff, will be able to pay.  No public interest is served by tying up assets unnecessary to safeguard a reasonably likely equitable award.

### CONCLUSION

Plaintiff is unlikely to prevail on appeal because the law does not permit a freeze of funds to satisfy statutory damages and because Dealextreme adequately showed that the frozen assets are unrelated to sales of counterfeit Klipsch goods in any event.  Plaintiff will suffer no cognizable harm in the absence of a stay, but staying the effect of this Court's October 11 Order

may cause serious harm to Dealextreme.  For these reasons, and as more fully set forth above,

Dealextreme respectfully requests that this Court deny Plaintiff's application for a stay.


Dated:  New York, New York
        October 19, 2012

                            BAKER & McKENZIE LLP



                            By:_____/s_____
                                   Douglas M. Tween
                                   John A. Basinger
                                   1114 Avenue of the Americas
                                   New York, New York 10036
                                   (212) 626-4100
                                   Attorneys for Defendant
                                   Dealextreme.com