**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KLIPSCH GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> BIG BOX STORE LIMITED d/b/a BIGBOXSTORE.COM and BIGBOXSAVE.COM; ZHONGREN CAO d/b/a UNITED PACIFIC CONNECTIONS COMPANY d/b/a ATECHPORT.COM and WIRELESSSPYCAMERA.BIZ; DANDAN WU d/b/a PANDAWILL.COM; *et al.*, <br><br> Defendants. | No. 12-cv-06283 (AJN) |

**PLAINTIFF KLIPSCH GROUP, INC.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A STAY PENDING APPEAL FROM THE
OCTOBER 11, 2012 ORDER MODIFYING INJUNCTION**

**TABLE OF CONTENTS**

**Page**

I.    PLAINTIFF HAS SHOWN A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL SUFFICIENT FOR A STAY PENDING THAT APPEAL .......................... 1

    A.    Plaintiff has made a showing of substantial possibility of success on appeal that this Court erred as a matter of law and otherwise abused its discretion in reducing the Restrained Assets ........................................................... 2

    B.    Because Plaintiff Seeks the Equitable Remedy of Accounting, Sufficient Funds Should Be Frozen to Ensure Availability of Full Final Relief, Including Statutory Damages ................................................................................ 5

    C.    The Supreme Court's Decision in *Feltner* Does Not Affect the Court's Power to Restrain Assets Sufficient to Ensure the Availability of Full Final Relief ................................................................................................................. 7

II.    THE BALANCE OF HARDSHIPS FAVORS THE GRANTING OF A STAY ............... 9

CONCLUSION .............................................................................................................................. 11

DWT 20546617v3 0095938-000002

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*3M Co. v. Mohan*,
  Civ. No. 09-1413, 2010 WL 509567 (D. Minn. Nov. 24, 2010) .............................................. 8

*Balenciaga Am., Inc. v. Dollinger*,
  2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. Oct. 8, 2010) ....................................................... 2

*Bar-Mar v. North Am. Die Casting Ass'n*,
  55 Fed. Appx. 389 (8th Cir. 2003) ......................................................................................... 8

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002) .................................................................................................. 6

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962) ................................................................................................................ 8

*Diane Von Furstenberg Studio v. Snyder*,
  No. 1:06cv1356, 2007 U.S. Dist. LEXIS 78915 (E.D. Va. 2007), *aff'd*, 2008 U.S.
  App. LEXIS 19955 (4th Cir. Sept. 28, 2008) ........................................................................ 8

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ............................................................................................................ 5, 6

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  315 F.Supp.2d 511 (S.D.N.Y.) (quoting S. Rep. No. 104-177, at 10 (1995))),
  *amended in part,* 328 F.Supp.2d 439 (2004) ........................................................................ 9

*Gucci Am. V. Weixing Li*,
  2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) ....................................................................... 6

*In re Focus Media Inc.*,
  387 F.3d 1077 (9th Cir. 2004) ................................................................................................ 6

*Louis Vuitton Malletier, S.A. v. Akanoe Solutions, Inc.*,
  No. C 07-03952, 2010 U.S. Dist. LEXIS 85266 (N.D. Cal. Mar. 19, 2010) ........................ 8

*Louis Vuitton Malletier v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002) ..................................................................................... 4

*Ltd. v. Assist You Home Health Care Services of Virginia, LLC*,
  144 F.Supp.2d 241 (S.D.N.Y. 2001) ...................................................................................... 6

*Masters v. UHS of Del., Inc.*,
  631 F.3d 464 (8th Cir. 2011) .................................................................................................. 8

DWT 20546617v3 0095938-000002

*Microsoft Corp. v. Master Computer, Inc.*,
    No. 4:CV-04-2567, 2005 WL 2562290 (M.D. Pa. Oct. 12, 2005) ............................................8

*Microsoft v. MBC Enters.*,
    120 Fed. Appx. 234 (10th Cir. 2004) .......................................................................................8

*Motorola, Inc. v. Abeckaser*,
    2009 WL 1362833 (E.D.N.Y. May 14, 2009) .........................................................................7

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
    692 F.2d 1272 (9th Cir. 1982) ..............................................................................................2, 8

*Rolex Watch, U.S.A., Inc. v. Pharel*,
    No. 09 CV 4810 (RRM), 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. 2011) ............................4

*The North Face Apparel Corp. v. TC Fashions, Inc.*,
    No. 05 Civ. 9083, 2009 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) ......................2, 3

*Tiffany (NJ) Inc. v. Luban,*
    282 F. Supp. 2d 123 (S.D.N.Y. 2003) .....................................................................................9

*United States ex rel. Rahman v. Oncology Assocs.*,
    198 F.3d 489 (4th Cir. 1999) ...............................................................................................6, 7

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
    2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000) .........................................................................6

**FEDERAL STATUTES**

15 U.S.C. § 117(c) ............................................................................................................................1

**PRELIMINARY STATEMENT**

Plaintiff filed a Notice of Appeal on October 15, 2012. As such, the question pending before this Court is whether it will grant a stay pending appeal, or in the alternative grant a temporary stay to allow Plaintiff to seek a stay from the Second Circuit.

**ARGUMENT**

**I.   PLAINTIFF HAS SHOWN A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL SUFFICIENT FOR A STAY PENDING THAT APPEAL**

Defendant, DealExtreme makes a fatal flaw by misstating the facts[1] as well as the question on appeal as one where the Second Circuit must find that a district court abuses its discretion any time it fails to freeze statutory maximum damages. As Plaintiff stated in its "Memorandum of Law in Support of its Motion for a Stay Pending Appeal from the October 11, 2012 Order Modifying the Injunction" ("Pl. Principle Brief"), the issues on appeal are whether this Court erred as a matter of law or otherwise abused its discretion in reducing the Restrained Assets from $2 million to $20,000 based only on Defendant's evidence of minimal sales of counterfeit products rather than documentary proof sufficient to show the source of the Restrained Assets were not the proceeds of its counterfeiting operations; and whether this Court erred as a matter of law in finding that it cannot restrain assets to preserve Plaintiff's status quo – even in its request for statutory damages – where Plaintiff has also requested the equitable right to an accounting of profits.

---

[1] The facts also don't support Defendant's statement that Plaintiff is seeking to freeze maximum statutory damages of $2 million. Plaintiff is entitled to at least maximum statutory damages of $6 million and possibly up to $12 million based on Defendant's sales of two models of headphones, each bearing copies of three different registered trademarks of Plaintiff. *See* 15 U.S.C. § 117(c).

### A. Plaintiff has made a showing of substantial possibility of success on appeal that this Court erred as a matter of law and otherwise abused its discretion in reducing the Restrained Assets

Citing *Cartier Int'l B.V. v. Liu*, the court in *The North Face v. TC Fashions,* explicitly holds that the party seeking relief from the asset restraint must come forth to "present documentary proof that particular assets [are] not the proceeds of counterfeiting activities."[2]

In *The North Face v. TC Fashions*, the plaintiffs were able to counter the accounting-of-profits evidence presented by the TC defendants because plaintiffs in that case benefitted from review of the underlying documentary evidence, which plaintiffs obtained through an *ex parte* order allowing for the seizure of such documents.

Since the decision in *The North Face v. TC Fashions,* there has been a significant shift in the counterfeiting paradigm. Today, counterfeiting is exemplified by persons/entities that operate from China or otherwise outside of the United States using the Internet to sell counterfeit goods into the United States. In these cases, a plaintiff has no ability to obtain a counterfeiter's records to prove actual damages. Plaintiff in this case was prevented from obtaining an order seizing documents because Defendant is similarly located outside the United States. Further handicapping Plaintiff, this Court stopped any expedited discovery, thus eviscerating the policy considerations underlying remedies for counterfeiting under the Lanham Act include the rationale that "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement."[3]

By basing its decision to reduce the Restrained Assets on self-reporting by a foreign defendant in an action for trademark counterfeiting, this Court has unwittingly created a loophole

---

[2] *The North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083, 2009 U.S. Dist. LEXIS 14226, at *3 (S.D.N.Y. Mar. 30, 2006) (citing *Cartier Int'l B.V. v. Liu*, 2003 U.S. Dist. LEXIS 6381, at *1 (S.D.N.Y. Apr. 17, 2003)); *see also Balenciaga Am., Inc. v. Dollinger*, 2010 U.S. Dist. LEXIS 107733, at *24 (S.D.N.Y. Oct. 8, 2010).
[3] *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982).

for this new paradigm of counterfeiters to evade discovery and any real jurisdiction of this Court by appearing for the purpose of reducing the final remedy a plaintiff can hope to obtain by admitting the counterfeiting but stating that its own accounting of profits do not support the amount previously restrained pursuant to court order.

Contrary to Defendant's claim that Plaintiff has asked this Court to presume DealExtreme is lying, Plaintiff is stating that unless and until discovery is completed neither Plaintiff or this Court will have the necessary information available to undertake the analysis in *The North Face v. TC Fashions*. This Court should not presume the truthfulness of DealExtreme's self-reporting, particularly when this Court found that evidence "cast doubt on the veracity of DealExtreme's representation that it is merely an eBay-like service."[4] Plaintiff submitted evidence sufficient to call into question DealExtreme's credibility, including:

- DealExtreme is widely known to trade in counterfeit goods, including but not limited to headphones.[5]

- DealExtreme has been the subject of numerous complaints that it has "scammed" consumers or otherwise defrauded them and has received a grade of "F" from the Better Business Bureau.[6]

- DealExtreme indicates that it will help buyers avoid customs duties by including inaccurate declarations on customs forms and by not including invoices.[7]

- DealExtreme admits that "100-200 or more" items offered for sale on its retail websites each month are reported as infringing.[8]

- DealExtreme obtained counterfeit KLIPSCH® earphones from suppliers who do not appear to even trade in such goods, and who would not be expected to have genuine

---

[4] Supplemental Declaration of George P. Wukoson, dated September 26, 2012, ("Wukoson Decl."), **Ex A.** (Transcript of the September 1, 2012 hearing, p. 46).
[5] *See, e.g*, Declaration of Tamara D. Tarbutton, dated September 12, 2012 ("Sept. 12 Tarbutton Decl.") ¶20; **Exhs. J**, **M**.
[6] *Id.* ¶21-23; **Exhs. K-N.**
[7] *Id.* **Exh. D**.
[8] Declaration of Daniel Chow, dated September 7, 2012 ("Sept. 7 Chow Decl.") ¶ 21.

3

KLIPSCH® earphones, despite the fact that DealExtreme claims to review goods to ensure trademarked products are genuine.[9]

- DealExtreme has submitted purported supplier agreements bearing false corporate seals and lacking details customary in the trade for these types of agreements.[10]

- Certain of the sworn statements of Daniel Chow on behalf of defendant DealExtreme are directly contradicted by DealExtreme's own websites.[11]

That DealExtreme is a subsidiary of a publically-traded company should not undo these discrepancies, particularly when DealExtreme's status on the Hong Kong Exchange was the result of a reverse-merger process, which process in general has become the subject of fraud investigations into Chinese companies.[12]

Despite all of this evidence, Defendant argues that if Plaintiff had made more than a single purchase, Plaintiff could have countered DealExtreme's self-reporting of profits. How many buys would it take to meet this burden in a world where counterfeiting defendants market counterfeit goods on the Internet to the "virtually limitless number of customers" available by that channel[13] and an equally limitless number of sources that offer their wares on the Chinese business-to-business and business-to-consumer websites, such as the notorious Taobao.[14] Would two or three buys be sufficient? Will plaintiffs be required to purchase hundreds of counterfeit goods from each entity/person before they are able to restrain anything other than a *de minimus* dollar amount (and then likely only an amount barely above the sum of a plaintiff's purchases)? Plaintiff respectfully submits that it could never meet the burden Defendant describes in today's

---

[9] S*ee* Declaration of Zhi-Ying James Fang, dated Sept. 26, 2012, ("Fang Decl.") ¶¶ 21-23 and Chow Decl., ¶15.
[10] Fang Decl. ¶¶ 13-20.
[11] *See* Declaration of Daniel Chow dated September 21, 2012, ("Sept. 21 Chow Decl.") ¶ 22; Sept. 12 Tarbutton Reply Decl., **Exh. B**
[12] Declaration of Orrin Falby, dated October 21, 2012, ("Falby Decl.") ¶¶ 8-10, **Exhs. F-H.**
[13] *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09 CV 4810 (RRM), 2011 U.S. Dist. LEXIS 32249, at *5-*6 (E.D.N.Y. 2011); *see also Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002).
[14] *See* The United States Trade Representative, Out-of-Cycle Review of Notorious Markets, Dec. 20, 2011 (Falby Decl. Exh. I), at 2-3.

4

counterfeiting environment without the benefit of discovery and production of documentary evidence.

The danger of this Court's approach is further highlighted by the limited PayPal records Plaintiff has been able to obtain pursuant to this Court's order. These PayPal records show that during a three-month period in 2011 when DealExtreme admits to selling the counterfeit Klipsch headphones, DealExtreme sold over 235 items per month having the same sales price as the counterfeit Klipsch headphones counting only those purchases that would have comprised of a single unit of a good at the price. This would not include sales of multiple items of the same price or sales of single/multiple items along with goods of varying prices, meaning that the 235 units per month is a conservative number.[15]  In contrast, during the comparable three month time period in 2012 when DealExtreme claims it had ceased selling the counterfeit Klipsch headphones, DealExtreme sold significantly less -- about 50 -- items per month having the same sales price as the counterfeit Klipsch headphones. These documents obtained from a third party indicate the need for discovery to determine the accuracy of Defendant's self-reporting. Without such discovery, this Court cannot truly survey the extent of DealExtreme's profits.[16]

> **B.     Because Plaintiff Seeks the Equitable Remedy of Accounting, Sufficient Funds Should Be Frozen to Ensure Availability of Full Final Relief, Including Statutory Damages**

Since the Supreme Court's holding in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,[17] courts have consistently held that where a plaintiff seeks *both* equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets.[18] In

---

[15] Falby Decl. ¶¶ 3-5, **Exhs. A-C**.
[16] Falby Decl. **Exh. C** .
[17] *Id.,* 527 U.S. 308, 333 (1999).
[18] *See, e.g., United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 494-98 (4th Cir. 1999) ("[W]hen the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment …"); *Wishnatzki &*

5

other words, "[t]hat money damages are claimed along with equitable relief does not defeat the district court's equitable powers. Under modern pleading rules, claims in law and equity may be asserted in a single civil action, and relief may be demanded in such an action 'in the alternative or of several different types.'"[19] Thus, where "in addition to seeking money damages and a permanent injunction," plaintiffs seek an accounting of the profits made by defendants as a result of their counterfeiting operation, the "accounting of profits is equitable relief that authorizes a district court to freeze a party's assets."[20]

The same is true for statutory damages: where the plaintiff has "the option of seeking either statutory damages, actual damages, or an accounting and profits remedy," the court may freeze the defendants' assets so long as the plaintiff merely seeks the equitable remedy in the alternative in its complaint.[21] Thus, where a plaintiff seeks both statutory damages and an equitable remedy such as an accounting of profits in the alternative, the Court has the power to freeze the defendant's assets. As noted in each of the above-cited cases, the Supreme Court's holding in *Grupo Mexicano* does not hold otherwise. The Supreme Court's "holding is carefully circumscribed, providing specifically that the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions *solely at law*."[22]

Nor is the court's power to restrain assets limited to freezing an amount that would satisfy the equitable remedies sought but not the legal ones. To the contrary, in "an action to recover damages for willful violations of the trademark provisions . . . numerous courts have

---

*Nathel, Inc. v. H.P. Island-Wide, Inc.*, 2000 WL 1610790 at *1 (S.D.N.Y. Oct. 27, 2000) (same); *Quantum Corporate funding, Ltd. v. Assist You Home Health Care Services of Virginia, LLC*, 144 F.Supp.2d 241, 250 n.9 (S.D.N.Y. 2001) (same).
[19] *Oncology Assocs.*, 198 F.3d at 494-98; *see also In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004).
[20] *Gucci Am. V. Weixing Li*, 2011 WL 6156936, at *4 (S.D.N.Y. Aug. 23, 2011).
[21] *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002).
[22] *Oncology Assocs.*, 198 F.3d at 496 (emphasis added); *see also In re Focus Media Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004) ("*Grupo Mexicano* suggests that when equitable claims are at issue, as opposed to ***solely legal damages claims***, the rule barring issuance of a preliminary injunction freezing assets is inapplicable.") (emphasis added).

6

held that injunctive relief freezing assets in order to ensure availability of ***final relief*** is permissible under the Lanham Act."[23]  Indeed, the purpose of the court's power is "to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the ***final relief*** requested."[24]  The *status quo* is preserved by freezing the entirety of the specified assets, not merely a portion, particularly given that the "final relief" requested may include either equitable or legal relief.

Thus, there is no basis in law to confine the asset freeze to that money which would be used to satisfy only equitable remedies.  Here, Plaintiff is entitled to the equitable remedy of an accounting, which allows the Court to preserve the *status quo* by freezing defendants' assets to ensure the availability of the final relief to which Plaintiff is entitled under the Lanham Act, including statutory damages.   Defendant's Memorandum in Opposition does not meaningfully argue otherwise.[25]  Accordingly, the Court should continue to freeze the $2 million in assets located in defendants' PayPal accounts, which Defendant had used in its sale of counterfeit KLIPSCH-branded goods.

      **C.**      **The Supreme Court's Decision in *Feltner* Does Not Affect the Court's Power to Restrain Assets Sufficient to Ensure the Availability of Full Final Relief**

The Supreme Court's decision in *Feltner* and its earlier decision in *Dairy Queen, Inc. v. Wood*[26] – holding that a claim for monetary relief under the Lanham Act was legal in nature and entitled the defendant to a jury trial – suggest that a claim for statutory damages under the

---

[23] *Motorola, Inc. v. Abeckaser*, 2009 WL 1362833 at *4 (E.D.N.Y. May 14, 2009) (emphasis added). DealExtreme misattributes to Plaintiff the "assert[ion]" that *Motorola* stands broadly "for the proposition that the Lanham Act generally permits asset freezes to safeguard statutory damages," Defendant DealExtreme.com's Memorandum in Opposition to Plaintiff's Order to Show Cause for a Stay ("Memo. in Opp. to Stay"), at 5, and then correctly states that the decision in *Motorola* came after judgment.  Plaintiff made no such assertion.  Rather, it cited *Motorola* because the court there explicitly distinguished *Grupo Mexico* as a contract case inapplicable to an asset restraint under the Lanham Act.  Pl. Principle Brief, at 9-10.
[24] *Oncology Assocs.*, 198 F.3d at 496 (4th Cir. 1999) (emphasis added).
[25] *See* Memo. in Opp. to Stay, at 8, stating, without the support of a *single* case, that "a district court is permitted to enter a prejudgment freeze of assets only as to those assets that would satisfy an equitable award of a defendant's profits."
[26] *Id.*, 369 U.S. 469, 476-78 (1962).

7

Lanham Act would be considered "legal" *for purposes of the Seventh Amendment right to a jury trial*.[27]  But the Court need not decide that question here because the parties' entitlement to a jury trial is not before the Court.  Instead, the question, as explained above, is whether the Court has power to exercise the remedy of asset restraint—which all courts agree is equitable—to ensure the availability of full final relief, including statutory damages should Klipsch elect to seek them.  Neither *Feltner* nor "its progeny" (Def. Opp. Mem. at 6) addressed this question, which is entirely different from whether a party is entitled to a jury trial.

In considering the Court's power to exercise this equitable remedy, Klipsch respectfully submits that the Court may take account of the equitable thrust of all remedies under the Lanham Act[28] and the policy interests underlying the remedies for counterfeiting.  These include the mandate to "fashion remedies which will take all the economic incentive out of trademark infringement"[29] and congressional recognition that statutory damages are necessary in counterfeiting cases because "'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible.'"[30]

---

[27] *See Bar-Mar v. North Am. Die Casting Ass'n*, 55 Fed. Appx. 389, 390-91 (8th Cir. 2003) (right to jury trial attaches to claim for statutory damages under Lanham Act); *Microsoft v. MBC Enters.*, 120 Fed. Appx. 234, 240 n.1 (10th Cir. 2004) (same); *3M Co. v. Mohan*, Civ. No. 09-1413, 2010 WL 509567, at *28-30 (D. Minn. Nov. 24, 2010) (same); *Louis Vuitton Malletier, S.A. v. Akanoe Solutions, Inc.*, No. C 07-03952, 2010 U.S. Dist. LEXIS 85266, at *43-44 (N.D. Cal. Mar. 19, 2010) (same); *Microsoft Corp. v. Master Computer, Inc.*, No. 4:CV-04-2567, 2005 WL 2562290, at *6-7 (M.D. Pa. Oct. 12, 2005) (same).  *But see Diane Von Furstenberg Studio v. Snyder*, No. 1:06cv1356, 2007 U.S. Dist. LEXIS 78915, at *9 (E.D. Va. 2007) ("Statutory damages are to be determined by the Court."), *aff'd*, 2008 U.S. App. LEXIS 19955 (4th Cir. Sept. 28, 2008).

[28] *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 271 (8th Cir. 2011) ("All Lanham Act remedies are equitable in nature.").

[29] *Playboy*, 692 F.2d at 1275.

[30] *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y.) (quoting S. Rep. No. 104-177, at 10 (1995)), *amended in part,* 328 F. Supp. 2d 439 (2004); *Tiffany (NJ) Inc. v. Luban,* 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (same).

8

Even if statutory damages are not equitable in the asset restraint context, the Court has the power to restrain sufficient assets to ensure complete relief regardless of whether statutory damages are labeled "legal" or "equitable," for the reasons explained above.

## II.    THE BALANCE OF HARDSHIPS FAVORS THE GRANTING OF A STAY

The evidence before this Court makes clear that any balance of hardships concerning a stay pending appeal strongly favors Plaintiff.  Despite DealExtreme's widespread reputation as a trafficker in counterfeit goods,  its admitted sales of headphones that are counterfeit KLIPSCH® products, and its steadfast determination to prevent any meaningful evaluation of its records, DealExtreme contends that the balance of hardships favors it because its only known financial accounts in the United States -- PayPal accounts used for transient funds -- could theoretically fill back up in the future if the $2,000,000 asset restraint is not maintained during appeal. Plaintiff should not be required to rely on hope as a substitute for the relevant law or facts.

The Court has granted this counterfeiting defendant's request to stop "any expedited discovery," including but not limited to discovery concerning financial records.[31]  Now that expedited discovery has been halted, DealExtreme represents to the Court that "DealExtreme has . . .  produced documents, answered interrogatories, [and] provided sworn declarations"[32]  In fact, however, DealExtreme has: 1) not produced a single page of documentation in response to Plaintiff's discovery requests; 2) refused to produce any documents related to infringement claims or prior knowledge of Klipsch – on relevance and burden grounds – notwithstanding the fact that the bulk of Mr. Chow's declarations are devoted to the supposed steps DealExtreme takes to "zealously" address infringement issues and confirm product authenticity;[33] 3) asserted in several document request responses that DealExtreme has already made full production by

---

[31] Memorandum and Order (Doc. 67), dated October 11, 2012, at p. 5.
[32] Memo. in Opp. to Stay, at 11.
[33] Sept. 7 Chow Decl. ¶¶ 15-23; Sept. 21 Chow Decl. ¶¶ 9, 26, 28 and 31.

9

virtue of reference to its declarations and those of plaintiff; 4) answered most document requests with the statement that it "has produced or will produce" documents; and 5) provided interrogatory responses that consist almost entirely of a re-hash of the Chow declarations.[34]

While expedited discovery has been stopped and Plaintiff has not yet had the accounting to which it is entitled, Plaintiff faces the threat that all but $20,000 of the $2,000,000 of assets currently restrained will disappear. Not surprisingly, DealExtreme offers no declaration or other support for its assurance that continued use of PayPal is required without "dramatically and detrimentally restructur[ing] its business model."[35] First, DealExtreme already offers payment options other than PayPal. DealExtreme's customers may also purchase via credit card.[36] Second, DealExtreme could easily transition to alternative payment processors, including those outside of the United States.[37] Lastly, the United States makes up only a small percentage of DealExtreme's website traffic[38] and DealExtreme's own financial reports indicate that its customer base "covers more than 200 countries and regions, where the potential risks of relying on one single market could be greatly diversified [such that] the impact of any incident in a particular market to the overall revenue would be <u>insignificant</u>."[39]

In light of the foregoing, the balance of hardships clearly favors a stay of the October 11, 2012 Order, to prevent DealExtreme's dissipation of assets prior to any accounting or discovery.

---

[34] Falby Decl., **Exhs. D and E.**
[35] Memo in Opp. to Stay, at 1.
[36] Sept. 7 Chow Decl. ¶ 14 (noting "MasterCard, Visa, or another credit card" as payment options); Sept. 12 Tarbutton Decl., **Exh. D** (payment methods include "Credit Card payment options").
[37] Supp. Wukoson Decl., **Exs. F-I** (articles detailing non-PayPal payment service providers).
[38] Wukoson Decl., **Exhs. D & E** (The United States accounts for only 3.2% and 4.3% of web traffic for Defendant's www.dx.com and www.dealextreme.com websites, respectively.)
[39] Supp. Chow Decl. **Exh. F**, at 18 (emphasis added).

10

**CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests that the Court grant its motion for a stay pending appeal. In the alternative, Klipsch requests that the Court enter a temporary stay to permit it to apply to the Second Circuit for a stay pending appeal.

Dated: October 21, 2012　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　DAVIS WRIGHT TREMAINE LLP

　　　　　　　　　　　　　　　　　　　By:   /s/ G. Roxanne Elings
　　　　　　　　　　　　　　　　　　　　　G. Roxanne Elings
　　　　　　　　　　　　　　　　　　　　　(RoxanneElings@dwt.com)
　　　　　　　　　　　　　　　　　　　　　Charles A. LeGrand
　　　　　　　　　　　　　　　　　　　　　(CharlesLeGrand@dwt.com)
　　　　　　　　　　　　　　　　　　　　　George P. Wukoson
　　　　　　　　　　　　　　　　　　　　　(GeorgeWukoson@dwt.com)

　　　　　　　　　　　　　　　　　　　1633 Broadway, 27th Fl.
　　　　　　　　　　　　　　　　　　　New York, NY 10019-6708
　　　　　　　　　　　　　　　　　　　Telephone: (212) 489-8230
　　　　　　　　　　　　　　　　　　　Facsimile: (212) 489-8340
　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Klipsch Group, Inc.*

DWT 20546617v3 0095938-000002